Casper W. MARSELLUS,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 76–2360
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 3, 1977.

Rehearing and Rehearing En Banc Denied
Jan. 31, 1977.

Richard B. Wallace, Stanley J. Bartel, Paul J. Levine, Miami, Fla., for petitioner-appellant.

Scott P. Crampton, Asst. Atty. Gen., Gary R. Allen, William S. Estabrook, III, Attys., Tax Div., Gilbert E. Andrews, Act. Chief, App. Sect., Dept. of Justice, Meade Whitaker, Chief Counsel, Internal Revenue Service, Washington, D. C., for respondent-appellee.

Before WISDOM, GEE and TJOFLAT, Circuit Judges.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5 Cir. 1970, 431 F.2d 409, Part I.

TJOFLAT, Circuit Judge:

In this appeal, Casper W. Marsellus questions a Tax Court decision assessing against him the 50% penalty for civil fraud under section 6653(b) of the 1954 Internal Revenue Code.[1] In the proceedings below, the Tax Court determined that, for the period of 1960 through 1970, Marsellus had aggregated a basic tax deficiency of $221,712.58. To this sum the court then added 50% of Marsellus' tax deficiency on a year-to-year basis, increasing his total debt to the United States by $110,856.31. On this appeal, Marsellus does not dispute the validity of the Tax Court's computation of his basic tax liability. Rather, his sole contention is that the government failed to meet its burden of proof as to the issue of fraud, and that therefore the Tax Court erred in assessing the 50% penalty under section 6653(b). We disagree, and accordingly affirm the Tax Court's decision.

The facts of this case are essentially undisputed. Casper Marsellus is a seventy-five-year-old man with an eighth-grade education and no formal training in accounting and taxation. Before 1940, his income was negligible. In 1940, he began working as a salesman, and, from that year until 1959, his income was subject to the withholding tax. For the duration of this period, he never filed a tax return. For a long while he believed this procedure was unnecessary because a portion of his income was being withheld for tax purposes. Sometime prior to 1959, however, he became aware of the fact that the law required him to file yearly returns. He did not file delinquent returns when this fact was brought to his attention, since he feared that the disclosure of his previous failures to file returns would cause him to lose his job.[2]

In 1959, Marsellus entered into a contract with Package Machinery Company of East Longmeadow, Massachusetts. Under the terms of the contract, Marsellus became the exclusive sales representative for Package Machinery in five southeastern states. He worked for the company on a commission basis. His income began to improve over the next several years, so that by the early 1960s he was doing quite well financially.[3] He was not, however, filing any tax returns during this time. By his own admission, he knew that the law required him to file returns, but, as before, he feared that a disclosure of his past legal shortcomings would prompt his employer to terminate his contract. In fact, in order to escape detection, he maintained only noninterest bear-

1. 26 U.S.C. § 6653(b) (1967), which reads as follows:

Fraud.—If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse.

2. He was also apprehensive that filing delinquent returns would lead to the disclosure of his criminal record. He acquired his record under somewhat bizarre circumstances. Since 1928, he has been married to his present wife. In 1936, he became intoxicated one night and awoke the next morning to discover that, at some point in the previous evening's festivities, he had married another woman. The state of New York charged him with bigamy, and, without the advice of counsel, he pled guilty. Perhaps feeling that his first wife's sanctions would be inadequate, the New York court sentenced him to prison, and he served three and one-half years in Sing-Sing for his indiscretions.

3. Marsellus stipulated to his taxable income for the period in question, which was as follows:

| Year | Taxable Income |
| --- | --- |
| 1960 | $ (485.42) |
| 1961 | 16,918.08 |
| 1962 | 29,445.69 |
| 1963 | 40,130.38 |
| 1964 | 10,738.90 |
| 1965 | 53,765.63 |
| 1966 | 73,914.94 |
| 1967 | 22,501.09 |
| 1968 | 67,564.65 |
| 1969 | 79,320.54 |
| 1970 | 55,708.63 |
| Total | $450,008.53 |

ing checking accounts, since he knew that banks report interest payments on savings accounts to the federal government.[4]

The IRS finally caught up with Marsellus in 1971. He was subsequently indicted for multiple violations of section 7203 of the Internal Revenue Code.[5] He pled guilty to one count of the indictment and the remaining counts were dismissed upon the motion of the United States Attorney. Marsellus was then fined $10,000 and sentenced to one year of imprisonment and two years of unsupervised probation for the section 7203 violation. The execution of the prison sentence was suspended.

In the instant proceedings, Marsellus challenges the government's determination of his tax deficiency for the years 1960–1970 as augmented by the 50% civil fraud penalty under section 6653(b) of the Internal Revenue Code. At the hearing before the Tax Court, most of the facts were stipulated, and the sole witness was Marsellus himself. His testimony was substantially directed toward establishing that he never intended to avoid paying his taxes, and that he therefore could not be guilty of fraud under section 6653(b). Marsellus' position was that he always intended to pay all his tax deficiencies someday, but that his fear of the possible repercussions precluded that course of action. The Tax Court rejected this contention, stating that Marsellus' "self-serving testimony and his retention of substantial liquid assets and earnings records, when considered in light of his lifelong pattern of nonfiling and his attempts to conceal, convince us that he intended to pay his taxes only if his scheme was uncovered." Thus, the Tax Court con-

cluded that the government had met its burden of proving that Marsellus' failure to pay his taxes was due to fraud, and assessed the 50% penalty. Marsellus then appealed the Tax Court's decision to this court.

■ The issue of fraud is a factual one. Thus, we may reverse the Tax Court's finding of fraud only if we find that it was "clearly erroneous." Fed.R.Civ.P. 52(a); *Webb v. Commissioner of Internal Revenue,* 394 F.2d 366, 378 (5th Cir. 1968). At the same time, we must judge the Tax Court's findings in light of the government's burden of proving section 6653(a) fraud by "clear and convincing" evidence. *See, e. g., id.; Goldberg v. Commissioner, of Internal Revenue,* 239 F.2d 316, 320 (5th Cir. 1956). On the facts of this case, we cannot say that it was clearly erroneous for the Tax Court to conclude that the government had met its burden.

■ Marsellus quite correctly notes that the mere failure to file tax returns, even over an extended period of time, does not *per se* establish fraud. *See Cirillo v. Commissioner of Internal Revenue,* 314 F.2d 478 (3d Cir. 1963). "Fraud" in this context necessarily implies some intentional conduct, and the law recognizes the somewhat limited role that circumstantial evidence must play in any inquiry into intent. While it is not conclusive, however, the failure to file tax returns is persuasive circumstantial evidence of fraud. *Id.; see also Stoltzfus v. United States,* 398 F.2d 1002, 1005 (3d Cir. 1968), *cert. denied,* 393 U.S. 1020, 89 S.Ct. 627, 21 L.Ed.2d 565 (1969). In this case, Marsellus himself admitted that his failure

---

4. In the proceedings below, Mr. Marsellus testified that he refrained from keeping interest-bearing accounts because "I was trying to avoid focus on the overall situation and I had thought that the more reports of earnings that are sent in, that the greater the chances are of exposure, and resultant punishment, et cetera." Tr. at 38.

5. Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015),

keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution.

26 U.S.C. § 7203 (1967).

to file returns was motivated by a fear that his previous failures to file would be detected. Rather than suggesting, as Marsellus contends, a lack of fraudulent intent, this fact alone establishes that his intent was to conceal his income, and his tax liability, from the government. *Id.; Fred N. Acker,* 26 T.C. 107 (1956). Thus, Marsellus' own testimony appreciably strengthened the government's case against him.

In *Jones v. Commissioner of Internal Revenue,* 259 F.2d 300 (5th Cir. 1958), this circuit held that, in order to establish civil tax fraud, the government must show both a wilful failure to file tax returns and some independent act of misrepresentation or concealment. Assuming the continued validity of this rule, we find that the record discloses that Marsellus committed an independent act of concealment when he deposited his funds solely in noninterest-bearing accounts, since by his own admission this plan was designed to conceal his income from the government.[6] Even if we were not bound by this circuit's "independent act" requirement, we would consider this act of concealment to be particularly persuasive evidence against Marsellus.

Thus, the government presented a strong case against the taxpayer in the proceedings below. In order to hold in the taxpayer's favor, the court would have had to believe his testimony that he never really intended to avoid paying his taxes. The court heard his testimony and chose not to believe him. We are especially reluctant to find clear error in a lower court's credibility choices, and we decline to do so in this case. Accordingly, the decision of the Tax Court is AFFIRMED.