STEVE A. HEBRANK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hebrank v. Commissioner
Docket No. 19274-80.
United States Tax Court
T.C. Memo 1982-496; 1982 Tax Ct. Memo LEXIS 248; 44 T.C.M. (CCH) 978; T.C.M. (RIA) 82496; August 30, 1982. *248 P, a pipefitter, earned wages during 1977 and 1978. He filed false Forms W-4 with his employers and claimed that he was exempt from withholding. He filed a false Form 1040 for 1977 and no Form 1040 for 1978. Held, P's wages constitute income received by him. Held, further, P is liable for the addition to tax for fraud under sec. 6653(b), I.R.C. 1954. Steve A. Hebrank, pro se. Peter D. Bakutes, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in and additions to the petitioner's Federal income taxes: Addition to tax
sec. 6653(b)
Year
Deficiency
I.R.C. 1954 [1]
1977
$1,304.00
$652.00
1978
186.00
93.00
The issues for decision are: (1) Whether in 1977 and 1978, the petitioner received "income" in the amounts determined by the Commissioner; and (2) whether any part of the underpayment of taxes for such years was due to fraud within the meaning of section 6653(b). FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioner, Steve A. Hebrank, was a legal resident of Riverview, Fla., at the time he filed his petition in this case. Mr. Hebrank was a pipefitter and a member of the Plumbers and Pipefitters Union Local 624. During 1977 and 1978, he received job referrals through the hiring hall of such union. During *250 such years, he secured employment from the employers and received wages from them as follows: Employer
Wages
1977
Limbach Company (Limbach)
$ 807.00
Power Systems, Inc. (Systems)
1,836.00
Davy Powergas, Inc. (Davy)
846.00
Bechtel Power Corp. (Bechtel)
2,266.00
Hunter Corporation (Hunter)
981.00
Power Piping Company (Piping)
3,533.00
Morrison Construction Co. (Morrison)
62.00
$10,331.00
1978
Catalytic, Inc. (Catalytic)
$ 2,232.61
Omega Steel & Services, Inc. (Omega)
158.34
Southeastern Constr. and Maint., Inc. (Southeastern)
2,018.42
$ 4,409.37
From each such employer, Mr. Hebrank received copies of the Forms W-2 showing the amount of wages received by him. During 1977, he also received $27 of interest income. Mr. Hebrank filed a return for 1976, which reflected that he received in such year adjusted gross income of $10,467.30, that income tax of $1,512.72 had been withheld, and that there was a tax liability of $1,410.66. Throughout 1977 and 1978, Mr. Hebrank had no dependents, and he has never been married. In March 1977, he signed and filed a Form W-4 (Employer's Withholding Allowance Certificate) with Piping, in which he *251 claimed no allowances for dependents and stated that he was single. Accordingly, such company withheld $197.72 from his wages. On or about June 22, 1977, Mr. Hebrank signed and filed a Form W-4E (Exemption from Withholding) with Davy. In such form, he claimed to be exempt from withholding and certified that he incurred no liability for Federal income tax for 1975 and that he anticipated that he would incur no liability for Federal income tax for 1976. Although such certificate referred to tax liabilities for 1975 and 1976, it is clear that he intended to refer to such liabilities for 1976 and 1977. On or about September 21, 1977, he signed and filed a Form W-4 with Hunter. On such form, he wrote that he was "exempt" from withholding and also indicated that he was married. Such form contained the following statement: Under the penalties of perjury, I certify that the number of withholding exemptions and allowances claimed on this certificate does not exceed the number to which I am entitled. If claiming exemption from withholding, I certify that I incurred no liability for Federal income tax for last year and that I anticipate that I will incur no liability for Federal income *252 tax for this year. [Emphasis added.] On or about November 18, 1977, Mr. Hebrank signed and filed a Form W-4 with Bechtel, on which he wrote "exempt" and checked the box indicating that he was married. Such form contained the same certificate as the Hunter form with respect to this tax liability for 1976 and 1977. As a result of Mr. Hebrank filing such Forms W-4, Davy, Hunter, and Bechtel did not withhold any income taxes from his wages; nor did Limbach, Systems, and Morrison. On or about April 17, 1978, Mr. Hebrank signed and filed a Form W-4 with Southeastern. On such form, he wrote that he was "exempt" and that he was married. Similarly, Mr. Hebrank filed a Form W-4 dated May 11, 1978, with Omega, on which he wrote "Exempt" twice and checked the box for married. On May 9, 1978, he signed and filed a Form W-4 with Catalytic, on which he claimed to be single and "exempt"; but on May 30, 1978, he signed and filed another Form W-4 with Catalytic, on which he indicated that he was married and claimed ten exemptions. The Forms W-4 filed with Southeastern and with Catalytic contained the certification that he had no Federal tax liability for 1977 and expected none for 1978. Neither *253 Omega nor Catalytic withheld any Federal income taxes from the wages of Mr. Hebrank in 1978; but notwithstanding his request to be treated as exempt, Southeastern withheld $175.41 from his wages.
In April 1978, Mr. Hebrank filed with the Internal Revenue Service a two-page document (Form 1040) for 1977. Across the top of such form was the following printed statement: FILED UNDER PROTEST--RETURN RECEIPT REQUESTED--PETITION FOR REDRESS OF GRIEVANCES--ALL ATTACHMENTS ARE INTEGRAL PART OF THIS RETURN--OTHER MATERIALS INCLUDED BY REFERENCE. The margins of such form also included the printed statements that he was confused as to the meaning of "dollars" and "gross income," that he was making certain constitutional objections, and that the form was signed involuntarily under threat of statutory punishment. On such Form 1040, Mr. Hebrank indicated that his wages were "under $2100." He claimed one exemption and indicated that he was single. He provided no information in response to the other requests for information on the return and indicated that he was asserting constitutional privileges against the disclosure of such information.He entered the word "NONE" on the lines for tax *254 liability and balance due IRS. Prior to the filing of such form for 1977, Mr. Hebrank discussed the material on the form with his co-workers. For 1978, Mr. Hebrank filed no documents with the IRS purporting to be a Federal income tax return. Sometime prior to July 1981, the Commissioner established a project in the Lakeland, Fla., area to determine the concentration of erroneous filings of Forms W-4. Such project revealed that many of the area employers were receiving a large percentage of "exempt" Forms W-4 from various craftsmen in the construction industry who were hired through the union hall.Furthermore, such project revealed that a large number of such craftsmen were plumbers and pipefitters. In his notice of deficiency, the Commissioner determined that the petitioner had received unreported income in 1977 and 1978. He also determined that the underpayment of taxes for those years was due to fraud within the meaning of section 6653(b). OPINION The first issue for decision is whether Mr. Hebrank earned income subject to tax during 1977 and 1978 in the amounts determined by the Commissioner. The petitioner has the burden of disproving such determination. Rule 142(a), *255 Tax Court Rules of Practice and Procedure[2]; Welch v. Helvering,290 U.S. 111 (1933). At trial, Mr. Hebrank conceded that the $27 of interest he earned constituted income and failed to dispute any of the substantive adjustments made by the Commissioner. Instead, he appears to maintain that his wages are not "income" because they merely constitute an exchange of his services for money and because there had been no showing that he realized a gain on such exchange. He argues that it is unconstitutional to tax him in the absence of such a gain. These arguments have been considered and rejected repeatedly by courts, and by now, such arguments are recognized as frivolous. It has long been held that wages constitute income. United States v. Buras,633 F. 2d 1356 (9th Cir. 1980), and cases cited therein; sec. 61(a)(1). Furthermore, the 16th Amendment is constitutional as applied to the petitioner. See Stanton v. Baltic Mining Co.,240 U.S. 103 (1916); Brushaber v. Union Pac. R.R.,240 U.S. 1 (1916); Cupp v. Commissioner,65 T.C. 68 (1975), affd. without pub. opinion 559 F. 2d 1207 (3d Cir. 1977). *256 Accordingly, we sustain the Commissioner's determination of the deficiencies for both 1977 and 1978. The only issue remaining is whether to sustain the Commissioner's determination of fraud under section 6653(b), which provides in part: (b) Fraud.--If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment * * * The Commissioner has the burden of proving, by clear and convincing evidence, that some part of the underpayment for each year was due to fraud.Rule 142(b); sec. 7454(a); Levinson v. United States,496 F. 2d 651 (3d Cir. 1974); Miller v. Commissioner,51 T.C. 915, 918 (1969). He must show that the taxpayer intended to evade taxes which he knew or believed that he owed by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F. 2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Webb v. Commissioner,394 F. 2d 366 (5th Cir. 1968), *257 affg. a Memorandum Opinion of this Court; Acker v. Commissioner,26 T.C. 107 (1956). The presence of fraud is a factual question to be determined by an examination of the entire record. Mensik v. Commissioner,328 F. 2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962); Otsuki v. Commissioner,53 T.C. 96 (1969). Since fraud can seldom be established by direct proof of intention, the taxpayer's entire course of conduct can often be relied on to establish such fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,53 T.C. at 105-106. In our judgment, the evidence in the record over-whelmingly establishes that Mr. Hebrank fraudulently underpaid his taxes during both of the years in issue.At trial, Mr. Hebrank appeared to be an intelligent man who was well aware of the obligation to file returns and pay taxes. He properly filed a return for 1976; yet, the document he submitted for 1977 clearly did not constitute a return within the meaning of section 6011 and the regulations thereunder. See Jarvis v. Commissioner,78 T.C. 646 (1982); *258 Thompson v. Commissioner,78 T.C. 558 (1982); Reiff v. Commissioner,77 T.C. 1169 (1981); see also United States v. Moore,627 F. 2d 830 (7th Cir. 1980); United States v. Smith,618 F. 2d 280 (5th Cir. 1980); United States v. Johnson,577 F. 2d 1304 (5th Cir. 1978). Furthermore, Mr. Hebrank filed no return at all for 1978. While the failure to file a return does not in itself establish fraud, such failure may properly be considered with other facts in determining whether any underpayment of tax is due to fraud. Habersham-Bey v. Commissioner,78 T.C. 304 (1982); see also Marsellus v. Commissioner,544 F. 2d 883, 885 (5th Cir. 1977), affg. a Memorandum Opinion of this Court; Stoltzfus v. Commissioner,supra; Beaver v. Commissioner,55 T.C. 85 (1970). In Habersham-Bey, we recently held that the failure to file returns, when coupled with the submission of a false Form W-4 to avoid withholding, was in itself indicative of an intent to evade the payment of income taxes. 78 T.C. at 313. We find Habersham-Bey to be particularly *259 apposite here. In addition, during 1977 and 1978, Mr. Hebrank filed false Forms W-4 on at least seven separate occasions. On such forms, he falsely stated that he was "exempt" from withholding because he was not liable for taxes for the past and current years, that he was married, or that he was entitled to ten exemptions. With one employer, Mr. Hebrank's filing status changed within a period of 3 weeks from "single" and "exempt" to married with ten exemptions. We do not believe his testimony that he "must have just hit the wrong box" or that he did not enter some of the information on such forms. Mr. Hebrank admitted that he received copies of all of his Forms W-2. Yet, the Form 1040 that he submitted for 1977 indicated that his wages were "under $2100." Compare Jarvis v. Commissioner,supra. The filing of the false Forms W-4 and the filing of such false Form 1040 for 1977 are further evidence of Mr. Hebrank's fraudulent intent.See United States v. Afflerbach,547 F. 2d 522, 524 (10th Cir. 1976); United States v. Porth,426 F. 2d 519 (10th Cir. 1970); Habersham-Bey v. Commissioner,supra.Moreover, *260 his testimony ws vague and evasive, and he offered no credible excuse for any of his acts and omissions during the years at issue. In view of all these circumstances, we are convinced that Mr. Hebrank intended to evade the payment of taxes during 1977 and 1978. Accordingly, we sustain the Commissioner's determination of fraud under section 6653(b). Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue code of 1954 as in effect during the years in issue.↩
2. All references to a rule are to the Tax Court Rules of Practice and Procedure.↩