DENNIS C. FEDECHKO AND BARBARA FEDECHKO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fedechko v. Commissioner
Docket No. 16504-87
United States Tax Court
T.C. Memo 1990-390; 1990 Tax Ct. Memo LEXIS 739; 60 T.C.M. (CCH) 272; T.C.M. (RIA) 90390; July 25, 1990, Filed *739 Decision will be entered for the respondent. Howard J. Avery, for the petitioners. Catherine R. Chastanet, for the respondent. WELLS, Judge. WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined additions to petitioners' Federal income taxes as follows: Addition to Tax
Year
Under Section 6653(b) [1]
1978
$ 1,846
1979
4,098
1980
5,821
1981
6,885
*740 The sole issue for decision is whether petitioners are liable for the fraud additions for the taxable years issue. Petitioners' tax liabilities for the taxable years in issue were paid in full at the time the notice of deficiency herein was mailed. FINDINGS OF FACT Some of the facts in this case are stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. In their brief, petitioners failed to refer to the pages of the transcript or other sources relied upon in support of their proposed findings of fact, making difficult the Court's consideration of petitioners' proposed findings. See Rule 151(e)(3). Moreover, although petitioners were ordered to file a reply brief, they failed to do so. The Court therefore did not have available to it any objections petitioners might have had to respondent's proposed findings of fact. Petitioners Dennis Fedechko and Barbara Fedechko, husband and wife, resided in Middle Village, New York, at the time they filed their petition in the instant case. For several years prior to and during the taxable years in issue, petitioner Dennis Fedechko (hereinafter individually referred to as *741 petitioner) was a certified public accountant, licensed in the State of New York. During the taxable years in issue, petitioner's clients and other accountants for whom he performed accounting services found petitioner to be competent and the quality of his work to be consistent. Petitioner's practice included the preparation of income tax returns and audits. Petitioner's wife was a housewife and had no separate income during the taxable years in issue. Petitioners timely filed their Federal income tax returns for all taxable years prior to 1976. Petitioners failed to file their Federal income tax returns for taxable years 1976 and 1977. Petitioners failed to file timely their Federal income tax returns for taxable years 1978, 1979, 1980, and 1981. Although petitioners filed extensions of time for filing their 1978, 1979, 1980, and 1981 tax returns, those extensions subsequently expired. Petitioners filed one Estimated Tax Declaration for each of taxable years 1978 and 1979 and made one estimated tax payment for each of those years. For taxable years 1975 through 1981, petitioners failed to file state income tax returns. In May 1975, petitioner and Haig Dadourian formed *742 a partnership to provide accounting services. During the existence of such partnership, petitioner and Dadourian divided the proceeds equally. When the partnership was terminated in July 1977, petitioner removed cash receipts and disbursements journals and accounts receivable documents from the firm's offices. In July 1977, petitioner became a salaried employee of an accounting firm. In January 1978, petitioner left that accounting firm to work on his own. Petitioner did not employ any other individuals in his accounting practice during the taxable years in issue. On March 25, 1982, a revenue officer who had been assigned the collection matter concerning petitioners' 1978, 1979, 1980, and 1981 tax returns contacted petitioner. Petitioner admitted that his returns were delinquent, but stated that he would file them "shortly." The returns were not filed, and on September 29, 1982, two of respondent's special agents made a visit to petitioners' home where petitioner conducted his accounting practice. Petitioner's wife was not present during the meeting. At the meeting with respondent's agents, petitioner stated that he had not filed his income tax returns for taxable years *743 1978 through 1981. He told the special agents several reasons why he had not filed the returns. Petitioner stated that in 1978 his mother became terminally ill and he became emotionally unstable, and that he was unemployed for a period of one and one-half to two years during the years in issue and did not earn more than $ 10,000 during such period. Petitioner also stated that he maintained books and records for the taxable years in issue. Petitioner informed the agents that 99 percent of all income received from his accounting practice was deposited into his checking account. Petitioner refused to provide the agents with any information regarding the mortgage on petitioners' home. Finally, petitioner stated that he was fully aware of his obligation to file tax returns. On October 27, 1982, petitioner and his attorney met with respondent's agents for the purpose of filing petitioners' 1978 tax return. Attached to the return were bank statements, cancelled checks, a savings passbook, and a cash receipts and disbursements analysis which was prepared in conjunction with the preparation of the return. Petitioners' 1978 tax return reported gross receipts in the amount of $ 28,259, *744 and the tax reported on that return was paid. Petitioner and his attorney met with respondent's agents on November 2, 1982 to file petitioners' 1979 tax return. Attached to the 1979 return were petitioners' bank statements, checking account statements, pages from a savings passbook, and a cash receipts and disbursements analysis which was not an original entry document. The 1979 tax return reported gross receipts of $ 40,113, and the tax reported on that return was paid. At the meeting, petitioner's attorney informed the agents that simultaneously prepared books and records did not exist for taxable years 1978 through 1981. On November 16, 1982, petitioner and his attorney again met with respondent's agents to file petitioners' 1980 Federal income tax return. Inadvertently, the return was unsigned. Consequently, the 1980 return was not filed until November 18, 1982. Accompanying the return were bank statements, cancelled checks, and a cash receipts and disbursement analysis which was prepared in conjunction with the preparation of the return. The 1980 tax return reported gross receipts of $ 48,050, and the tax reported on that return was paid. As noted below, petitioners' *745 return for taxable year 1981 was not filed until 1984. Subsequent to the filing of the tax returns for taxable years 1978, 1979, and 1980, the Criminal Investigation Division of the Internal Revenue Service began an investigation to verify independently the income reported by petitioners on their income tax returns. Petitioner, on the advice of counsel, refused to provide any information as to the source of his income. [2] In June 1983, respondent's agents mailed "circularization letters" to petitioner's clients and business associates seeking information such as the amount of fees paid to petitioner during the taxable years in issue, the nature of the services performed, and knowledge of any other persons who used petitioner's services. Based upon his investigation, respondent determined that petitioner had the following gross receipts in the respective years: Year
Gross Receipts
Cash Receipts
Checks Received
1978
$ 25,083.85
$   235.00
$ 24,848.85
1979
42,354.75 1,025.00 41,329.75
1980
54,168.10 1,535.00 52,633.10
1981
64,002.07 1,400.00 62,602.07 *746 The investigation revealed that checks were cashed or endorsed over to third parties during 1978, 1979, 1980, and 1981 in the amounts of $ 19,178.85, $ 35,715.75, $ 36,447.10, and $ 46,967.07, respectively. On October 11, 1983, subsequent to the mailing of the circularization letters, petitioners filed amended Federal income tax returns for taxable years 1978, 1979, and 1980 which indicated that petitioners' gross receipts were understated on the original returns in the amount of $ 6,767, $ 11,714, and $ 13,457, respectively. Payments of additional taxes on those gross receipts were submitted with the amended returns and accepted by the Internal Revenue Service. On each of the amended returns, petitioners noted that the correction made on the amended return was due to the receipt of correct information from payers for whom petitioner had performed services as an outside subcontractor. The only accounting services performed by petitioner during the taxable years in issue as an outside subcontractor were for one individual accountant and one accounting firm. For accounting services rendered, the individual accountant paid petitioner $ 487.25, $ 193.75, $ 240.70, and $ 100 during *747 the taxable years 1978, 1979, 1980, and 1981, respectively. For accounting services rendered, the accounting firm paid petitioner $ 11,026.60, $ 8,550.00, and $ 770.00, during taxable years 1978, 1979, and 1980, respectively. On the amended return for taxable year 1979, petitioners, in addition, noted that "review of the arithmetic of receipts and disbursements revealed [an] error of approx[imately] $ 6,200." The criminal investigation of petitioner culminated in the case of United States v. Dennis Fedechko (Docket Case No. CR 87-419), filed in the United States District Court for the Eastern District of New York by the United States Attorney. In that proceeding, the Government charged petitioner with one count of willfully and knowingly failing to file a Federal income tax return for 1980 in violation of section 7203 and one count of willfully and knowingly failing to file a Federal income tax return for 1980. On September 4, 1987, the District Court entered a judgment of guilt and conviction. The District Court's judgment has never been modified or appealed, and is now final. In 1978, petitioner's mother developed cancer, which put petitioner under emotional strain. *748 Petitioner never sought psychiatric help, however, and was not evaluated by a psychiatrist until July 1983, three years after his mother died, and solely at the request of his attorney at the time. Petitioner's psychiatric evaluation took place after the criminal investigation began. He was diagnosed as suffering from a major depressive disorder with anxiety features, limited attention span, and poor concentration, which commenced in early 1978 and continued until 1981. The tax return for taxable year 1981 was submitted on March 13, 1984; the return reported gross receipts in the amount of $ 69,160, and the tax reported on that return was paid. During the years in issue, Barbara Fedechko was aware of an individual taxpayer's obligation to file a Federal income tax return and recalled filing joint income tax returns for all taxable years prior to 1976. Mrs. Fedechko knew that her husband was earning taxable income during the taxable years in issue. Subsequent to the September 29, 1982, meeting with respondent's agents, Mrs. Fedechko assisted her husband in accumulating the information necessary to prepare their tax returns. Mrs. Fedechko also assisted her husband in preparing *749 the tax returns which were filed in 1982. During the taxable years in issue, Mrs. Fedechko's signature appeared, as the second endorsement, on 491 checks which petitioner received from his clients for accounting services rendered. Fifty-three of such checks were for amounts in excess of $ 1,000. Mrs. Fedechko cashed checks without receiving instructions to do so from petitioner. She used some of the cash to pay for her mother-in-law's medication and household necessities. Mrs. Fedechko also paid the household bills by check during the taxable years in issue. In respondent's notice of deficiency, mailed to petitioners on March 10, 1987, respondent determined that petitioners were liable for additions to tax under section 6653(b) as set forth above. OPINION Respondent contends that petitioners' underpayment of Federal income taxes for the taxable years in issue is due to fraud. Section 6653(b) provides for an addition to tax equal to 50 percent of the amount of the entire underpayment if any part of an underpayment is due to fraud. Petitioners' position is simply that respondent has not proved that petitioners fraudulently underpaid their taxes for the taxable years in issue. *750 Respondent bears the burden of proving, by clear and convincing evidence, underpayments attributable to fraud for each taxable year. Katz v. Commissioner, 90 T.C. 1130, 1143 (1988); Section 7454(a); Rule 142(b). Two elements must be satisfied before a taxpayer may be liable for the fraud addition. First, respondent must prove that an underpayment exists, and second, respondent must show that at least a part of the underpayment is attributable to fraud. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3rd Cir. 1968); Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989). In the case of a joint return, a spouse will not be liable for the fraud addition unless some part of the underpayment is due to the fraud of such spouse. Stone v. Commissioner, 56 T.C. 213, 227-228; Section 6653(b). The existence of fraud is an issue of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). *751 Direct evidence of the requisite fraudulent intent is, of course, seldom available, but fraud may be proved by circumstantial evidence. Rowlee v. Commissioner, 80 T.C. 1111 (1983). The taxpayer's entire course of conduct may establish the requisite intent. Stone v. Commissioner, supra at 223-224; Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). The intent to conceal or mislead may be inferred from a pattern of conduct. See Spies v. United States, 317 U.S. 492, 499 (1943). An extended pattern of nonfiling plus some "convincing affirmative indication" of the requisite fraudulent intent constitutes fraud. Grosshandler v. Commissioner, 75 T.C. 1, 19 (1980). Badges of fraud include: failure to file tax returns; inadequate records; implausible or inconsistent explanations of behavior; dealing in cash; failure to cooperate with tax authorities ( Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. a Memorandum Opinion of this Court); the making of false and inconsistent statements to revenue agents ( Grosshandler v. Commissioner, supra at 20); and the *752 filing of false documents ( Stephenson v. Commissioner, 79 T.C. 995, 1007 (1982), affd. 748 F.2d 331 (6th Cir. 1984)). In the instant case, petitioners do not contest the existence of underpayments for taxable years 1978, 1979, 1980, and 1981. Thus, the sole issue for us to decide is whether respondent has proved by clear and convincing evidence that some part of each such underpayment is due to fraud. Respondent relies upon numerous indicia to establish such fraud. First, petitioner was aware of his obligation to file returns. See United State v. McCabe, 416 F.2d 957, 958 (7th Cir. 1969), cert. denied 396 U.S. 1058 (1970) (taxpayer's filing of timely returns in prior years is evidence which permits the inference that he knew he had the legal obligation to file returns and that he intentionally failed to do so.) Petitioner was a certified public accountant and was well educated. He had filed income tax returns for previous years and prepared tax returns on behalf of clients during the years in issue. Grosshandler v Commissioner, supra at 19-20. Second, petitioner did not file tax returns until *753 after he was contacted by respondent's agents. It therefore appears that petitioner did not intend to file any tax returns until his nonfiling was discovered. Even when the revenue officer contacted petitioner on March 25, 1982, petitioner did not file his returns until respondent's special agents contacted him approximately six months later. Such conduct constitutes willful concealment of income to evade the payment of taxes. Grosshandler v. Commissioner, supra at 20. Moreover, the filing of the delinquent returns, the amended returns, and the payment of the taxes shown due on the returns, do not vitiate any fraud perpetrated when the returns were due. See Badaracco v. Commissioner, 464 U.S. 386, 394 (1984) ("a taxpayer who submits a fraudulent return does not purge the fraud by subsequent voluntary disclosure; the fraud was committed, and the offense completed, when the original return was prepared and filed"). Third, petitioner made false and inconsistent statements to respondent's agents during the course of their investigation. The record is replete with petitioner's inconsistent statements. The following statements made by petitioner *754 at the initial meeting with respondent's agents on September 29, 1982, are the most significant: petitioner was out of work for a period of one and one-half years during the taxable years in issue and did not earn more than $ 10,000 during those years; petitioner maintained books and records for the years in issue; and 99 percent of petitioner's income from his accounting practice was deposited into his only checking account. Those statements proved to be false. We believe that such statements were made in an attempt to continue to conceal petitioner's income and evade taxes. Grosshandler v. Commissioner, supra.
Petitioners failed to file timely their returns for the years in issue. While such failure to file, standing alone, does not establish fraud, it is persuasive circumstantial evidence of fraud. Marsellus v. Commissioner, 544 F.2d 883, 885 (5th Cir. 1977); Stoltzfus v. United States, 398 F.2d at 1005; Kotmair v. Commissioner, 86 T.C. 1253, 1261 (1986). Petitioner's guilty plea under section 7203 to willfully failing to file a tax return for 1980 collaterally estops petitioner from denying that he willfully *755 failed to file a return for that year. Castillo v. Commissioner, 84 T.C. 405 (1985). Such conduct constitutes circumstantial evidence of petitioner's willful concealment of income to evade the payment of taxes in taxable year 1980. At the November 2, 1982, meeting with respondent's agents and at trial, petitioner claimed that he did not keep adequate records of his income and expenses. As a certified public accountant, however, he was well aware of his obligation to maintain adequate records. Thus, petitioner's failure to do so constitutes another indicium of fraud. Grosshandler v Commissioner, supra.
Petitioners' failure to file state income tax returns for the taxable years 1975 through 1981 is evidence of their willfulness in failing to pay taxes and bears upon their attitude toward the reporting and payment of taxes, whether state or Federal. United States v. Magnus, 365 F.2d 1007, 1011-1012 (2d Cir. 1966), cert denied 386 U.S. 909 (1967). Moreover, petitioners did not file the amended returns for 1978, 1979, and 1980 until after they learned that they were under criminal investigation. The filing of the *756 original returns containing substantial omissions of income was a knowing falsehood, which provides additional evidence of petitioners' intent to evade taxes. Stephenson v. Commissioner, 79 T.C. at 1007. Petitioners would have us believe that they filed their original returns under pressure from respondent and without correct information from two clients for whom petitioner performed services as an outside subcontractor. If that were the case, we ponder why there is no correlation in any of the taxable years in issue between the amounts omitted and the amounts of income paid to petitioner by such clients. The amended returns for taxable years 1978, 1979, and 1980 indicate that petitioner's gross receipts were understated in the amount of $ 6,767, $ 11,714, and $ 13,457, respectively. For accounting services rendered by petitioner as an outside subcontractor, petitioner, however, was paid $ 11,513.85, $ 8,643.75, and $ 1,101.70, during taxable years 1978, 1979, and 1980, respectively (petitioners also noted that there was an arithmetic error of approximately $ 6,200 on their 1979 tax return which would increase the amount omitted in taxable year 1979 to $ 14,843.75). *757 One client was not required to file a Form 1099 during the taxable years in issue because payments for petitioner's services did not exceed $ 600 during any particular tax year. Because no Forms 1099 were offered at trial, it is unclear whether the other client issued a Form 1099 for taxable years 1978, 1979, or 1980. That client testified that it was customary for it to send timely a Form 1099 to nonemployees, and a duplicate form was not issued in 1983, the year the amended returns were filed. Petitioner offered no credible explanation for such discrepancy. We observed petitioner's demeanor on the witness stand and were not convinced by his testimony that the original returns were filed under pressure from respondent and without correct information from two clients for whom he provided accounting services as an outside subcontractor. Petitioners argue that petitioner's mental illness prevented him from forming the requisite intent to evade taxes. His actions, however, were inconsistent with such a theory. Petitioner's ability to function normally is confirmed by his ability to prepare tax returns for his clients during the taxable years in issue. Because petitioner's taxable *758 income during the taxable years in issue steadily increased, his alleged mental illness did not appear to cause his accounting practice to deteriorate during the taxable years in issue. An expert in psychiatry testified for petitioner. The expert testified that he did not examine petitioner during the taxable years in issue. Nevertheless, the expert concluded in 1983 that petitioner was suffering from a major depressive disorder with anxiety features which commenced in early 1978 and continued until 1981. The expert could not form an opinion whether petitioner would have had the requisite fraudulent intent during the relevant taxable years. The evidence offered by petitioners does not convince us that petitioner was continuously in an emotional state that rendered him incapable of preparing and filing his own tax returns or that he could not form the requisite intent to evade taxes. Accordingly, we hold for respondent with respect to the addition to tax for fraud against petitioner. With respect to the determination of the fraud addition against Mrs. Fedechko, respondent has relied upon several indicia of fraud. Like petitioner, Mrs. Fedechko was aware that she was required *759 by law to file tax returns. She knew that joint returns had been filed in previous taxable years. Mrs. Fedechko knew that her husband was earning income during the taxable years in issue and that returns had to be filed for those years. Notwithstanding this knowledge, she consistently ignored her obligation to file returns. See United States v. McCabe, 416 F.2d at 958. During the taxable years in issue, Mrs. Fedechko claims that the cash received from the negotiation of the fee income checks was used to pay household expenses and expenses incurred by her mother-in-law. Mrs. Fedechko, however, also paid household bills by check. We are not convinced that such large amounts of cash were necessary for those expenses and instead find that checks were cashed rather than deposited in furtherance of petitioners' plan to conceal income. See Probber v. Commissioner, T.C. Memo. 1985-193 (cash received from the negotiation of checks for student fees which was used to buy food and drinks for taxpayer's students was an indicium of fraud as taxpayer failed to corroborate his testimony that he spent thousands of dollars in cash on such entertainment). *760 Moreover, Mrs. Fedechko assisted in the preparation of the original returns containing substantial omissions of income of which she was aware and knew she was obligated to report for taxable years 1978, 1979, and 1980. Such actions constitute additional evidence of Mrs. Fedechko's intent to evade the payment of taxes. Stephenson v. Commissioner, supra.As noted above, the explanation offered by petitioners for the discrepancies between the original and amended returns is not supported by the record. Based on the entire record, we conclude that respondent has clearly and convincingly carried his burden of proof. We hold that petitioners' underpayment of taxes during taxable years 1978, 1979, 1980, and 1981 was due to fraud. Accordingly, petitioners are liable for additions to tax under section 6653(b) for all of the taxable years in issue, as determined by respondent. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner, however, did not assert his Fifth Amendment↩ privilege against self-incrimination at any time during the criminal investigation.