T.C. Memo. 1999-100


UNITED STATES TAX COURT


DAVID M. LEGGETT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17637-97.                Filed March 30, 1999.


David M. Leggett, pro se.

<u>Michael A. Pesavento</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined the following deficiencies in, and additions to, petitioner's Federal income tax (tax):

|  |  | Additions to Tax | |
|  |  | Sec. | Sec. |
| Year | Deficiency | 6651(f) | 6654 |
| 1992 | $17,383 | $8,312 | $408 |
| 1993 | 20,790 | 15,593 | 809 |
| 1994 | 25,676 | 19,257 | 1,199 |
| 1995 | 20,070 | 20,302 | 1,468 |

The issues remaining for decision are:

(1) Should respondent's determination that petitioner's filing status is married, filing separately be sustained?  We hold that it should.

(2) Is petitioner liable for the addition to tax under section 6651(f)[1] for fraudulent failure to file a return for each of the years at issue?  We hold that he is.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner's mailing address was in Florida at the time the petition was filed.

During the years at issue, petitioner, who dealt primarily in cash, worked as an employee of Biddle Painting and Drywall, Inc. (Biddle).  On or about June 30, 1993, petitioner submitted to Biddle a false Form W-8 (Certificate of Foreign Status) in which he claimed not to be a U.S. citizen and to be exempt from backup withholding rules.  As an employee, Biddle paid petitioner compensation for his services during 1992, 1993, 1994, and 1995

---

[1] All section references are to the Internal Revenue Code (Code) in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

in the amounts of $52,456, $60,970, $74,925, and $79,360, respectively.

On January 24, 1995, petitioner and Biddle executed what purported to be a contract which was entitled "CONTRACT BETWEEN TRADESMAN/LABORER/CRAFTSMAN AND PROPERTY OWNER". That document stated in pertinent part:

> In the absence of "real" money (commodity money), the TRADESMAN [petitioner] offers to trade his property at the rate of _____ Federal Reserve Notes (FRN's) for each hour of labor expended on behalf of the PROPERTY OWNER [Biddle]. The TRADESMAN does not receive the FRN's as equal trade value for his property, but for the potential opportunity to trade said FRN's for something of actual value. However, the PROPERTY OWNER is immediately, upon receipt of the FRN's by the TRADESMAN, relieved of any further obligations to the TRADESMAN for the labor for which said FRN's were given.
>
> *   *   *   *   *   *   *
>
> TRADESMAN is specifically NOT the employee of the PROPERTY OWNER, nor is he an "independent contractor".

During 1992 and 1993, petitioner received taxable interest income from Great Western Bank in the amounts of $149 and $88, respectively. During 1992, he also received self-employment income from NTS Sabal Golf Villas in the amount of $181.

Biddle and the other payors of income to petitioner during the years at issue reported the payment of such income to the Internal Revenue Service (Service).

Petitioner made estimated tax payments for 1992 in the amounts of $1,800, $2,000, and $2,500 on April 20, 1992, June 20, 1992, and September 23, 1992, respectively. Petitioner made no

estimated tax payments for 1993, 1994, and 1995.  No amounts were withheld by Biddle for any of the years at issue from the compensation that Biddle paid petitioner during those years.

Petitioner and his wife, Donna Leggett (Ms. Leggett), filed joint Federal income tax returns, Forms 1040 (returns), for 1988, 1989, 1990, and 1991, in which they reported the following adjusted gross income and tax liability:

| Year | Adjusted Gross Income | Tax Liability |
|------|----------------------|---------------|
| 1988 | $38,495 | $4,144 |
| 1989 | 37,280 | 3,551 |
| 1990 | 33,685 | 2,816 |
| 1991 | 31,970 | 2,651 |

On March 4, 1994, petitioner submitted to the Service Forms 1040NR, U.S. Nonresident Alien Income Tax Return (Forms 1040NR), for the years 1984 through 1992.  Handwritten at the top of those forms were the words "AMENDED RETURN".  Most of the lines in those forms were stricken out and other lines in those forms contained the notation "N/A".  The word "(DEFERRED)" appeared on the line showing "Amount * * * REFUNDED TO YOU".

Around January 1994, respondent assessed frivolous return penalties (civil penalties) against petitioner and Ms. Leggett for filing frivolous Forms 1040NR.  Thereafter, but prior to May 24, 1994, respondent commenced collection efforts against petitioner and Ms. Leggett for those penalties.  In response to those collection efforts, petitioner wrote a letter to the

Service's District Director in Jacksonville, Florida. That

letter stated in pertinent part:

> It has come to my attention that your thugs/agents locally have been making their rounds to local Natural Free Citizens to extort money from them, and to steal their property. The returns that you refer to in your 4/18/94 data have been Lawfully revoked as of 4/20/93 (Lawful Affidavit) and corrected Lawfully. My 4/29/94 NOTICE OF OBJECTION, NOTICE TO ABATE (enclosed) still stands. Any action on or against my property will be deemed as Fraud and WILLFUL TRESPASS.

By letter dated December 22, 1995, respondent disallowed the

so-called "deferred" refunds that petitioner claimed in the Forms

1040NR for all taxes previously paid for 1984 through 1992.

Petitioner did not file returns for the years at issue. On

August 30, 1995, a revenue agent of the Service (revenue agent)

sent a letter (August 30, 1995 letter) to petitioner and Ms.

Leggett, which stated in pertinent part:

> The Internal Revenue Service does not have a record of you [sic] having filed your Federal Income Tax Returns for the years shown above [1992, 1993, and 1994].[2] In order to resolve this matter as expeditiously as possible, and make the matter as simple as possible, it is very important that you contact this office within 10 days from the date of this letter. Please call us at the telephone number shown above.
>
> At the time you telephone, you will be informed by an Internal Revenue Agent of the Examination Division what procedures you will need to follow to file your delinquent returns. You may wish to commence gathering documentation to support the items of income and expense listed on delinquent return. * * *

---

[2] At the time the revenue agent sent the Aug. 30, 1995 letter, petitioner's return for 1995 was not yet due.

> Should you fail to telephone us within the 10 day period, you will leave us no choice but to proceed with other actions to bring you into compliance with the tax laws. This may include preparation of a report based upon information currently in our possession, and assessing any taxes, interest, and penalties for the year involved.
>
> If you have previously filed returns for the years shown above, or have returns completed that can be processed as delinquent returns, please inform us at the time you telephone. You will be asked to provide copies of the returns previously filed, or the delinquent returns prepared and not filed. [Fn. added.]

Shortly after the August 30, 1995 letter was sent to petitioner, petitioner telephoned the revenue agent to request a meeting which he would be allowed to record by taping it with his tape recorder. In September 1995, the revenue agent and another revenue agent of the Service met (September 1995 meeting) with petitioner, his father William Leggett, and another individual named Toby Brown. Petitioner brought some papers with him to the September 1995 meeting, and he started to read frivolous arguments from those papers about his being a nonresident alien. He also questioned the authority of the Service over him. The revenue agents attempted to ask petitioner several questions at the September 1995 meeting in order to ascertain his income and similar information that they needed to determine his tax liability for the years for which he did not file returns. However, petitioner refused to answer those questions. Instead, he continued to read from the papers that he had brought with him. When the revenue agents realized that petitioner did not intend

to answer any of their questions, they informed him that the meeting was concluded and asked him and the individuals who accompanied him to leave. After the September 1995 meeting, petitioner sent a letter to the revenue agent's supervisor complaining that he had been denied due process. Petitioner did not provide to the Service at the September 1995 meeting, or at any other time, any documents or information from which his tax liability could be determined for the years for which he did not file returns.

The Service's audit of petitioner continued from August 1995 through October 1996. That audit took significantly longer than that type of audit should have taken because petitioner refused to cooperate with the revenue agent or any other representatives of the Service. As a result of petitioner's refusal to cooperate with the Service, the Service had to conduct an extensive investigation in order to determine petitioner's income for each of the years at issue and other information relevant to determining his tax liability for each such year.

On February 19, 1988, petitioner acquired his residence located at 5136 Neponset Avenue, Orlando, Florida (Neponset property) for $98,000. In acquiring that property, petitioner obtained on February 19, 1988, a mortgage loan from the California Federal Savings and Loan Association in the amount of $78,400. During 1992, petitioner paid principal and interest totaling $24,983 on the mortgage loan on the Neponset property,

and that mortgage loan was completely paid off by December 22, 1992.

During August 1995, petitioner obtained from World Savings and Loan Association another mortgage loan on the Neponset property in the amount of $65,000. According to the application for that mortgage loan, the purpose of the loan was to acquire farmland in Tennessee.

On or about August 14, 1995, after respondent had commenced collection activity against petitioner and Ms. Leggett for the civil penalties, petitioner purchased real property in Tennessee (Tennessee property) for approximately $130,000. Petitioner titled that property in the name of Young Farm Trust, Frank Starling Trustee. The Tennessee property was not incumbered by any mortgages. On or about February 13, 1997, the Young Farm Trust, Frank Starling Trustee, transferred the Tennessee property back to petitioner and Ms. Leggett for no consideration.

On March 20, 1996, after respondent had commenced collection activity against petitioner and Ms. Leggett for the civil pen-alties, petitioner and Ms. Leggett conveyed the Neponset property to Michael T. Morgan for no consideration. On June 5, 1996, a notice of Federal tax lien was filed with the Clerk of the Circuit Court for Orange County, Florida, for taxes owed by Michael T. Morgan. Shortly thereafter, on June 17, 1996, Michael T. Morgan transferred the Neponset property back to petitioner and Ms. Leggett for no consideration.

In March 1996, petitioner and an unidentified individual visited (March 1996 meeting) the office of a revenue officer of the Service (revenue officer) who was responsible for conducting investigations of delinquent returns and collecting unpaid taxes. Petitioner asked the revenue officer for permission to tape the March 1996 meeting, but the revenue officer declined because the revenue officer did not have equipment readily available with which he also could have taped that meeting. However, the revenue officer informed petitioner that if petitioner were to give him 10 days' written notice, he could arrange another meeting that could be taped. Petitioner informed the revenue officer at the March 1996 meeting that there were certain civil penalties that he wanted to have abated by the Service that arose from his having submitted Forms 1040NR. The revenue officer asked petitioner at the March 1996 meeting if he was a U.S. citizen or a nonresident alien. Petitioner responded that he was both. The revenue officer told petitioner that he had to be one or the other, but that he could not be both.

The revenue officer also advised petitioner at the March 1996 meeting that the Service's records indicated that he had not filed returns for 1992, 1993, and 1994 and that the Service had records from payors of income to petitioner, which indicated that petitioner had substantial income for those years.[3] Petitioner

_____

[3] As of the time of the March 1996 meeting, petitioner's
(continued...)

told the revenue officer that he had only approximately $2,000 to $3,000 of income for 1992.

At the March 1996 meeting, petitioner told the revenue officer that he had asked the Service many times to show him what provision in the Code required him to file returns, and he asked the revenue officer to specify the sections in the Code and the regulations that required him to file returns. The revenue officer pointed out to petitioner that a notice issued by the Service, which petitioner had brought with him to the March 1996 meeting, informed taxpayers that sections 6011 and 6012 required taxpayers to file returns. The revenue agent was not able to cite for petitioner at the March 1996 meeting the specific sections of the regulations under those Code sections that elaborated on those filing requirements.

The revenue officer told petitioner at the March 1996 meeting to send him a written request for abatement of the civil penalties, which showed reasonable cause as to why the Service should abate those penalties, and to submit his delinquent returns for 1992, 1993, and 1994. The revenue officer informed petitioner that he would request that petitioner's request for abatement and delinquent returns be assigned to him, since he was having the March 1996 meeting with petitioner and thus was familiar with those matters.

---

[3] (...continued)
return for 1995 was not yet due.

After the March 1996 meeting, the revenue officer opened a case file on petitioner. The revenue officer never received from petitioner a request for abatement of the civil penalties or his delinquent returns for 1992, 1993, and 1994. However, the revenue officer did receive on a date not disclosed by the record a letter from petitioner in which he raised questions about who has the authority to sign a return for him and about the Code of Federal Regulations. The revenue officer sent petitioner a response to that letter in which he informed petitioner (1) that he had decided not to abate the civil penalties, since petitioner had not provided him with reasonable cause for abating those penalties, and (2) that petitioner had the right to appeal that decision.

On May 28, 1997, respondent issued a notice of deficiency (notice) to petitioner in which respondent determined, inter alia, that petitioner is liable for the addition to tax under section 6651(f) for fraudulent failure to file a return for each of the years at issue. In the notice, respondent determined that petitioner's filing status for those years is married, filing separately.

On April 30, 1998, the Service filed separate notices of Federal tax lien with the Register of Deeds, Jackson County, Gainsboro, Tennessee, in favor of the United States on all property and rights to property belonging to petitioner and Ms. Leggett, respectively, for the civil penalties.

OPINION

At trial, petitioner refused to take a position on respondent's determination in the notice that his filing status for the years at issue is married, filing separately.  Petitioner presented no evidence at trial to show that that determination is incorrect.  On brief, petitioner makes no reference to respondent's determination with respect to his filing status.  On the record before us, we find that petitioner has failed to show that respondent's determination in the notice about his filing status is wrong.

The only issue remaining for our decision is whether petitioner is liable for the addition to tax under section 6651(f) for fraudulent failure to file a return for each of the years at issue.  In order for that addition to tax to apply, we must consider essentially the same elements that are involved in determining whether a taxpayer is liable for the additions to tax for fraud under section 6663 and its predecessor provision, section 6653(b).  See Clayton v. Commissioner, 102 T.C. 632, 653 (1994).  Respondent must prove by clear and convincing evidence under section 6651(f) that petitioner's tax liability for each year at issue exceeds his prepayment credits and that his failure to file a return for each such year was due to fraud.  See secs. 7454(a), 6651(a)(1), (b)(1); Rule 142(b); see also Clayton v. Commissioner, supra.

Although petitioner does not dispute that his tax liability for each of the years 1993, 1994, and 1995 exceeds his prepayment credits for each of those years, he alleges on brief that "Respondent has not established * * * an underpayment of tax" for 1992. We disagree. Although petitioner initially claimed that there was an overpayment for 1992, he ultimately conceded before the trial in this case that there is no overpayment for 1992. Moreover, the record establishes, and we have determined, that, after taking into account the concessions by the parties with respect to 1992, petitioner has a tax liability for that year which is in excess of the prepayment credits that he has for that year (viz., estimated tax payments totaling $6,300).

To prove fraudulent intent, respondent must prove by clear and convincing evidence that the taxpayer intended to evade tax that he or she believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax. See Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Parks v. Commissioner, 94 T.C. 654, 661 (1990); Laurins v. Commissioner, 889 F.2d 910, 913 (9th Cir. 1989), affg. Norman v. Commissioner, T.C. Memo. 1987-265. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. See DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Recklitis v. Commissioner, 91 T.C. 874, 909 (1988); Gajewski v. Commissioner, 67

T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed or imputed and should not be found in circumstances which create at most only suspicion. See Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25; Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989); Katz v. Commissioner, 90 T.C. 1130, 1144 (1988). Direct evidence of the requisite fraudulent intent is seldom available. See Petzoldt v. Commissioner, supra at 699; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Consequently, respondent may prove fraud by circumstantial evidence. See Toussaint v. Commissioner, supra at 312; Marsellus v. Commissioner, 544 F.2d 883, 885 (5th Cir. 1977), affg. T.C. Memo. 1975-368; Rowlee v. Commissioner, supra at 1123.

The courts have identified a number of badges of fraud from which fraudulent intent may be inferred. Those badges include (1) consistent and substantial understatement of income, (2) failure to file a return, (3) lack of credibility of the taxpayer's testimony, (4) dealing in cash, (5) concealing assets, and (6) failing to cooperate with respondent's representatives. See Laurins v. Commissioner, supra at 913; Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Ruark v. Commissioner, 449 F.2d 311, 312-313 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-48; Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992); Parks v. Commissioner, supra at 664-665; Miller v. Commissioner, 94 T.C. 316, 334

(1990); <u>Recklitis v. Commissioner</u>, <u>supra</u> at 910; <u>Castillo v. Commissioner</u>, 84 T.C. 405, 409 (1985); <u>Rowlee v. Commissioner</u>, <u>supra</u> at 1125.  In addition, the taxpayer's background and the context of the events in question may be considered circumstantial evidence of fraud.  See <u>Plunkett v. Commissioner</u>, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274; <u>Niedringhaus v. Commissioner</u>, <u>supra</u> at 211.  Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia constitutes persuasive circumstantial evidence of fraud.  See <u>Bradford v. Commissioner</u>, <u>supra</u> at 307; <u>Petzoldt v. Commissioner</u>, <u>supra</u> at 700.

The record in this case is replete with indicia of fraud by petitioner.  Prior to the years at issue, petitioner had a history of filing returns and paying taxes.  He thus knew that he was required to file returns and pay taxes.  Nonetheless, petitioner willfully did not file a return or report income for any of the years at issue, thereby establishing a pattern of substantial and consistent understatement of income.  We did not find petitioner's explanations of his behavior to be credible.  On or about June 30, 1993, petitioner submitted to Biddle a false Form W-8 in which he claimed not to be a U.S. citizen and to be exempt from backup withholding rules.[4]  Except for estimated tax

---

[4] Petitioner claims that Biddle hired petitioner as an independent contractor and that therefore there was no withholding to be made by Biddle at the time in June 1993 when

(continued...)

payments totaling $6,300 for 1992, petitioner did not make estimated tax payments for the years at issue. No amounts were withheld by Biddle for any of the years at issue from the compensation that Biddle paid petitioner during those years. On March 4, 1994, petitioner submitted to the Service false Forms 1040NR seeking refunds of taxes previously paid for 1984 through 1992. Petitioner dealt primarily in cash during the years at issue and concealed certain real properties that he and Ms. Leggett owned by transferring them to nominees. Petitioner failed to cooperate with respondent's representatives during respondent's audit of him.

Despite the foregoing indicia of fraud on the part of petitioner that are established by the record, petitioner claims that he did not intend to evade taxes for the years at issue. He contends that his failure to file returns and pay taxes due for those years was based on his good-faith misunderstanding that the

---

[4] (...continued)
petitioner submitted the false Form W-8 to Biddle. The parties stipulated that petitioner worked for Biddle during the years at issue as an employee, and not as an independent contractor. However, it is not clear from the record how Biddle treated petitioner during those years. In this connection, Biddle and petitioner entered into a purported contract in January 1995, which stated that petitioner was neither an employee nor an independent contractor of Biddle. Moreover, although petitioner made estimated tax payments totaling $6,300 for 1992, at the time in June 1993 when he submitted the false Form W-8 to Biddle, he had stopped making estimated tax payments. We believe that the submission of that false form was an attempt by petitioner to make sure that Biddle did not withhold any amounts from the compensation that he paid petitioner.

tax law did not require him to file such returns and pay such taxes. According to petitioner, despite repeated inquiries, the Service never informed him of his responsibility to file returns, and his independent research and consultation with various attorneys, predominately criminal defense attorneys, about the requirement to file returns showed that there were "confusing and conflicting case authorities" on that question.

A good-faith misunderstanding of the tax laws could negate fraud under section 6653(b). See Niedringhaus v. Commissioner, supra at 217. However, "There is a difference * * * between a good-faith misunderstanding of the law and a good-faith belief that the law is invalid or a good-faith disagreement with the law". Id. Based on our observation of petitioner's demeanor at trial, we did not find him credible and do not accept his explanations as to why he did not file returns and pay taxes due for the years at issue and why he and Ms. Leggett transferred certain of their real properties to nominees. We are convinced on the record before us that petitioner did not have a good-faith misunderstanding of the tax law.[5] By way of illustration, after respondent commenced collection efforts in early 1994 against

---

[5] At best, petitioner had a good-faith belief that the tax law is invalid, or he had a good-faith disagreement with the tax law. Even if petitioner had believed that he did not have to file returns because the tax law requiring such filing is unconstitutional, a belief that the tax law is unconstitutional and should not apply is not a sufficient defense to fraud. See Cheek v. United States, 498 U.S. 192, 205-206 (1991); Niedringhaus v. Commissioner, 99 T.C. 202, 219 (1992).

petitioner and Ms. Leggett with respect to the civil penalties
that respondent had assessed around January 1994, petitioner
wrote a letter to the Service's District Director in Jackson-
ville, Florida, which stated in pertinent part:

> It has come to my attention that your thugs/agents
> locally have been making their rounds to local Natural
> Free Citizens to extort money from them, and to steal
> their property.  The returns that you refer to in your
> 4/18/94 data have been Lawfully revoked as of 4/20/93
> (Lawful Affidavit) and corrected Lawfully.  My 4/29/94
> NOTICE OF OBJECTION, NOTICE TO ABATE (enclosed) still
> stands.  Any action on or against my property will be
> deemed as Fraud and WILLFUL TRESPASS.

By way of further illustration, when petitioner met with re-
spondent's agents at the September 1995 meeting, he made friv-
olous arguments about why he was not required to file returns,
questioned the authority of the Service over him, and refused to
provide the information that those agents requested in an effort
to determine his tax liability or otherwise to cooperate with
respondent's representatives.  At the March 1996 meeting that
petitioner had with the revenue officer, petitioner asked him to
specify the sections in the Code and the regulations that re-
quired him to file returns.  The revenue officer pointed out to
petitioner that the notice issued by the Service, which peti-
tioner had brought with him to the March 1996 meeting, informed
taxpayers that sections 6011 and 6012 required taxpayers to file
returns.  Nonetheless, petitioner never filed returns for the
years at issue.

Based on our examination of the entire record in this case, we find that respondent has established by clear and convincing evidence that petitioner intended to evade tax for each of the years 1992 through 1995, which he believed to be owing, by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax.  We further find on that record that petitioner is liable for the addition to tax under section 6651(f) for each of those years.

To reflect the foregoing and the concessions of the parties,

Decision will be entered
under Rule 155.