T.C. Memo. 1999-99


UNITED STATES TAX COURT


CARLYE A. CHRISTIANSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14283-97.                    Filed March 30, 1999.


<u>Judy E. Hamilton</u>, for petitioner.

<u>Ramon Estrada</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


CHIECHI, <u>Judge</u>:  Respondent determined the following additions to petitioner's Federal income tax:

| | | | Additions to Tax | | |
| --- | --- | --- | --- | --- | --- |
| Year | Sec. 6651(f) | Sec. 6653(b)(1) | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) | Sec. 6653(b)(2) |
| 1985 | -- | $3,552 | -- | -- | * |
| 1986 | -- | -- | $11,981 | ** | -- |
| 1987 | -- | -- | 9,218 | *** | -- |
| 1988 | -- | 12,427 | -- | -- | -- |
| 1989 | $12,983 | -- | -- | -- | -- |
| 1990 | 29,429 | -- | -- | -- | -- |

* 50 percent of the interest due on $7,103.
** 50 percent of the interest due on $15,975.
*** 50 percent of the interest due on $5,791.

The issues for decision are:

(1) Have the respective periods of limitations prescribed by section 6501[1] for the years at issue expired? We hold that they have not.

(2) Is petitioner liable for the additions to tax under section 6653(b) for each of the years 1985, 1986, and 1987 and under section 6651(f) for each of the years 1989 and 1990? We hold that she is.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.[2]

Petitioner resided in San Diego, California, at the time the petition was filed.

Petitioner, an attorney, was a sole practitioner and aspired to emulate the amount of money made by similarly situated at-

---

[1]All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Unless otherwise indicated, our Findings of Fact and Opinion pertain to the years at issue.

torneys. As part of her law practice, petitioner was mindful of due dates for, inter alia, court appearances and filing documents.

Petitioner also served at various times from around the early to mid-1980's until 1990 as a part-time judge of the Small Claims Court, Municipal Court, and Superior Court in and around San Diego, California. As part of her judicial duties, petitioner imposed on litigants due dates for, inter alia, court appearances and filing documents and kept track of those dates.

Petitioner has been aware since her youth of her annual obligation to file a Federal income tax return (return). For years prior to 1981, petitioner signed and filed her returns.

Petitioner married Doug Reynolds (Mr. Reynolds) in 1981, and they divorced in 1985. While they were still married, petitioner and Mr. Reynolds were the subject of an audit by the Internal Revenue Service (Service) with respect to 1981 through 1983. They retained Daryl Golemb (Mr. Golemb), a certified public accountant, to represent them with respect to that audit. Petitioner, Mr. Reynolds, and the Service resolved the audit of 1981 through 1983, as reflected in Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment (1981-1983 Form 870). The 1981-1983 Form 870 listed the names of the taxpayers to which that form pertained as "Douglas R. and Carlye Reynolds". Attached to

the 1981-1983 Form 870 was, inter alia, Form 886-A, Explanation

of Items, which stated in pertinent part:

> You failed to timely file your 1981 and 1982
> Federal income tax returns.  You arranged to have your
> returns prepared only upon contact and request by
> personnel of the IRS.  As attorneys, you knew of your
> obligation to file tax returns, especially with
> adjusted gross income exceeding [$]100,000 annually.

> *    *    *    *    *    *    *

> You are reminded that failure to file timely
> federal income tax returns can result in criminal
> prosecution and assertion of civil fraud penalties.

Although Mr. Golemb, as the authorized representative of

petitioner and Mr. Reynolds, could have signed the 1981-1983 Form

870 on their behalf, it was Mr. Golemb's practice not to sign

such a form on behalf of his clients.  Instead, Mr. Golemb

required the taxpayer to which such a form pertained to sign it.

In light of Mr. Golemb's practice regarding the signing of a Form

870, both petitioner and Mr. Reynolds, as the taxpayers to which

the 1981-1983 Form 870 pertained, were supposed to have signed

that form in order for it to be effective.

As a result of the Service's audit of petitioner and Mr.

Reynolds with respect to 1981 through 1983, petitioner was aware

that, at a minimum, no return for 1982 was filed during her

marriage to Mr. Reynolds.  She also had heard rumors that,

because of that audit, Mr. Reynolds could have been imprisoned

for failure to file a return.  Petitioner was fully aware of the

possible criminal consequences for failing to file a return.

Petitioner filed a joint return with Mr. Reynolds for 1984. After their divorce in 1985, petitioner did not file returns for 1985 through 1990.  Nor did she timely file California income tax returns for those years.

Petitioner employed a part-time bookkeeper to assist her, inter alia, in maintaining books and records with respect to her law practice, preparing and filing any required Federal payroll and similar tax returns, and organizing the return-preparation information that petitioner's return preparer, Mr. Golemb, needed to prepare petitioner's Federal income tax returns.  Petitioner hired a new bookkeeper around late 1988 or early 1989.  After that new bookkeeper started working for petitioner, she became aware that Federal payroll tax returns had not been filed for three quarters.  The new bookkeeper filed those delinquent returns, and petitioner paid the Federal payroll taxes and penalties due as a result of such late filing.

Shortly after each of the years at issue, and within sufficient time for Mr. Golemb to prepare timely petitioner's return for each such year, petitioner's bookkeeper sent him the information that he needed to prepare each such return.  Mr. Golemb prepared a return for petitioner for each of the years at issue from the information that her bookkeeper sent to him.  Mr. Golemb prepared the payment section in petitioner's 1987 return relating to estimated tax payments from information that petitioner provided to him.

After Mr. Golemb prepared petitioner's return for each of the years at issue, he signed each such return in the space designated for the signature of the return preparer but not in the space designated for the signature of the taxpayer and mailed the original of each such return to petitioner with a transmittal letter. The transmittal letter that Mr. Golemb used to send petitioner her return for each of the years at issue contained precise and specific instructions to petitioner that she should, inter alia, verify her name, address, and Social Security number as they appeared in each such return, sign each such return, and mail it and a check for any tax due to the Service (1) at the address set forth in the transmittal letter or (2) in a pre-addressed mailing envelope enclosed with that letter. Mr. Golemb never informed petitioner that he would sign and file her return for any of the years at issue.

Although petitioner received the return that Mr. Golemb prepared for each of the years at issue within sufficient time to file each such return on or before its due date, she did not file any of those returns. Instead, she placed in her desk drawer each of the transmittal packages from Mr. Golemb containing each such return and Mr. Golemb's transmittal letter. As petitioner received the return for each of the years at issue that Mr. Golemb had prepared, she was reminded of her tax liability for each such year.

Petitioner made some estimated tax payments for her taxable year 1987. Mr. Golemb filed on petitioner's behalf requests for extensions of time to file the returns for certain of the years at issue.

At some time during the years at issue, petitioner discussed with Mr. Golemb the fact that she had not received a tax bill from the Service. During that discussion, petitioner and Mr. Golemb speculated that petitioner had not received a tax bill because respondent might have lost track of her records when her surname changed after her divorce from Mr. Reynolds. At no point did petitioner believe that she had a responsibility to contact the Service because she had not received a tax bill for any of the years at issue.

In March 1992, the Service sent petitioner a letter requesting that she telephone a revenue agent of the Service (revenue agent) who was responsible for the examination of petitioner in order to discuss her status as a nonfiler. Petitioner never contacted the revenue agent. Consequently, in April 1992, the revenue agent telephoned petitioner after having obtained her telephone number through the Yellow Pages. During that telephone conversation, the revenue agent told petitioner that the Service had no records of her having filed returns since 1981 and requested that petitioner clarify her filing status. In response, petitioner adamantly maintained that she had filed all her returns. Subsequently, during the same telephone conversa-

tion with the revenue agent, petitioner stated that if her returns had not been filed, it was the fault of her return preparer, Mr. Golemb, who was responsible for filing petitioner's returns for her. Petitioner also told the revenue agent at another time that if the Service had no record of petitioner's having filed her returns, the Service must have lost her returns.

On May 21, 1992, the revenue agent met with Mr. Golemb (May 21, 1992 meeting) who was authorized to represent petitioner with respect to the Service's examination of her. At that meeting, the revenue agent and Mr. Golemb agreed that petitioner had filed joint returns under the name Carlye Reynolds with Mr. Reynolds for 1983 and 1984.

As for petitioner's returns for the years at issue, Mr. Golemb informed the revenue agent at the May 21, 1992 meeting that it was petitioner's position that originals of those returns had been filed with the Service. He told the revenue agent that he had retained copies of those returns that he could present to her. Later in the day on May 21, 1992, Mr. Golemb presented the revenue agent with copies of petitioner's returns for the years at issue. The copy of petitioner's 1985 return that Mr. Golemb presented to the revenue agent on May 21, 1992, was not signed or dated by petitioner. The original signature of petitioner appeared on each of the copies of petitioner's returns for 1986 through 1990 that Mr. Golemb gave the revenue agent on that day, but no date appeared next to her signature. The original of Mr.

Golemb's signature did not appear on any of the copies of petitioner's returns for the years at issue, although copies of his signature as return preparer appeared on each of those copies. No date appeared next to the copies of Mr. Golemb's signature on the copies of petitioner's 1985 and 1986 returns. Copies of the dates April 27, 1988, October 12, 1989, April 4, 1990, and April 6, 1991, appeared next to copies of Mr. Golemb's signature on the copies of petitioner's returns for 1987 through 1990, respectively.

Because, inter alia, petitioner, through Mr. Golemb, maintained at the May 21, 1992 meeting that her returns for the years at issue had been filed, the copies of those returns that Mr. Golemb presented to the revenue agent on May 21, 1992, were not treated as filed returns but instead were treated as information copies only.

The Service, on a date that is not clear from the record, temporarily processed as filed the copies of petitioner's returns for the years at issue that Mr. Golemb had presented to the revenue agent on May 21, 1992. However, around August 13, 1996, the Service corrected that action on its records and reflected on those records an entry for "substitute for return" for each year at issue, which is an administrative entry used in cases where a taxpayer has not filed a return.

Subsequent to the Service's civil audit of petitioner for the years at issue, the Service, through its criminal investiga-

tion division, conducted a criminal investigation of petitioner for those years. Petitioner admitted to the Service's special agent responsible for that investigation (special agent) that she was aware of her obligation to file returns and that she knew the consequences of not filing returns. Petitioner told the special agent that she filed her 1985 and 1986 returns, that Mr. Golemb filed her 1987, 1988, and 1989 returns for her, and that she filed her 1990 return. Petitioner also advised the special agent that sometime during 1987 Mr. Golemb told her that he had not filed her returns, which prompted her to file her 1985 and 1986 returns in 1987. However, petitioner did not file her 1985 and 1986 returns in 1987. Petitioner also informed the special agent that she and Mr. Golemb had speculated that the Service had not contacted her with respect to her failure to make tax payments because it might have lost her records due to her name change after she divorced Mr. Reynolds. Petitioner gave the special agent incorrect information about payments for certain house roof repairs, which petitioner claimed that she made but which in fact were paid by Mr. Reynolds.

On March 6, 1996, a plea agreement in United States v. Christianson (plea agreement) was filed in the U.S. District Court for the Southern District of California, in which petitioner pleaded guilty under section 7203 to failing willfully to file her 1990 tax return. Petitioner admitted in the plea agreement that she knew that she was required to file a return

for 1990 by April 15, 1991, and willfully failed to do so and that she "went so far as to have an income return prepared by a tax return preparation business which calculated a tax due and owing for calendar year 1990 in the amount of approximately $35,061 and then willfully failed to file the return with the Internal Revenue Service."  Petitioner also admitted in the plea agreement that she "willfully failed to file required returns with the Internal Revenue Service for tax years 1987, 1988 and 1989, failing to report an additional tax due and owing in the amount of approximately $39,753."  When petitioner entered into the plea agreement, she had had a full opportunity to discuss all the facts and circumstances of the case with her defense counsel and had a clear understanding of the charges and the consequences of her plea.  She pleaded guilty in the plea agreement because "in truth and in fact defendant [petitioner] is guilty and for no other reason."

After the criminal case with respect to petitioner had concluded, the revenue agent examined petitioner's bank accounts for the years at issue to determine whether there was cash available to pay the tax that she owed for each of those years. The revenue agent concluded that petitioner had sufficient cash at that time to pay the entire tax due for 1990, but not to pay the total of the tax due for each of the remaining years at issue.  The revenue agent also determined from her examination of petitioner's bank accounts that petitioner had funds available at

the time the return for each of the other years was due. During the years at issue, petitioner expended funds, inter alia, on several skiing vacations, expensive clothing, weekly visits to the hairdresser, and some very fine antiques that she used as office furniture.

The income, expenses, and tax shown in the copy of petitioner's return for each of the years at issue that Mr. Golemb presented to the revenue agent on May 21, 1992, have been accepted by the Service, with minor adjustments, as correct. Taking those minor adjustments into account, petitioner realized adjusted gross income of $23,114, $43,934, $31,854, $46,005, $47,605, and $110,057 for 1985 through 1990, respectively. As a result, petitioner is liable for, and has signed an agreement with respect to the years at issue (1985-1990 Form 870) in which she agreed that she is liable for, additional taxes for those years of $7,103, $15,975, $12,291, $16,569, $17,310, and $39,239, respectively. In addition, petitioner is liable for, and agreed in the 1985-1990 Form 870 that she is liable for, the additions to tax under section 6654 for failure to pay estimated taxes in the amounts of $407, $773, $663, $1,059, $1,173, and $2,583 for 1985 through 1990, respectively.

On April 18, 1997, respondent issued a notice of deficiency (notice) to petitioner for 1985 through 1987. Respondent determined in that notice that petitioner is liable for the additions to tax for fraud under section 6653(b)(1) and (2) for

1985 and under section 6653(b)(1)(A) and (B) for 1986 and 1987. On the same date, respondent issued a separate notice to petitioner for 1988 through 1990. Respondent determined in that notice that petitioner is liable for the additions to tax for fraud under section 6653(b)(1) for 1988 and the additions to tax for fraudulent failure to file under section 6651(f) for 1989 and 1990.

OPINION

In the portion of her brief headed "POINTS RELIED UPON", petitioner asserts:

> There was no fraud committed by petitioner; therefore, she is not liable for any penalty under IRC §§ 6651(f), 6653(b)(1), 6653(b)(1)(A), 6653(b)(1)(B) or 6653(b)(2).
>
> No other penalties can be assessed against petitioner, because the statute of limitations for assessment and collection of a tax liability for the taxable years ended December 31, 1986,[3] through 1990, expired prior to respondent's issuance of the statutory notices of deficiency. More specifically, petitioner filed her income tax returns for the period in question in May 1992. The Commissioner issued statutory notices of deficiency on April 18, 1997. Petitioner did not execute any type of document extending the statute of limitations prior to the date of expiration of the assessment period. The three-year period for assessment expired prior to April 18, 1997. The six-year period for assessment does not apply because the IRS [sic] the income and deductions reported on petitioner's returns was accepted as correct after examination by the IRS. [Fn. added]

_____

[3]Although not altogether clear, we presume that the reference to the taxable year ended Dec. 31, 1986, is a typographical error. We shall proceed on the assumption that petitioner claims that the period of limitations for 1985 also has expired.

In the portion of her brief headed "ARGUMENT", petitioner elaborates upon her position that she is not liable for any of the additions to tax under sections 6651(f) and 6653(b). However, petitioner provides no further explanation in that portion of her brief about her claim that the respective periods of limitations for the years at issue have expired. We nonetheless shall briefly address that contention.

The expiration of the period of limitations is an affirmative defense which petitioner raised in the petition and on brief and on which she has the burden of proof. See Rule 142(a); United States v. Gurley, 415 F.2d 144, 147 (5th Cir. 1969); Amesbury Apartments, Ltd. v. Commissioner, 95 T.C. 227, 240 (1990). Petitioner must make a prima facie case establishing that she filed her return for each of the years at issue, that the period of limitations for each such year has expired, and that respondent mailed the notices to her after the expiration of each such period. See Miami Purchasing Serv. Corp., Inc. v. Commissioner, 76 T.C. 818, 823 (1981); Robinson v. Commissioner, 57 T.C. 735, 737 (1972). If petitioner were to make such a showing, the burden of going forward with the evidence would shift to respondent, and respondent would have to introduce evidence establishing that the respective periods of limitations for the years at issue have not expired. See Amesbury Apartments, Ltd. v. Commissioner, supra at 241; Adler v. Commissioner, 85 T.C. 535, 540 (1985). If respondent were to make such a showing, the

burden of going forward with the evidence would shift back to petitioner. However, the burden of persuasion never shifts from petitioner. See Amesbury Apartments, Ltd. v. Commissioner, supra.

Although petitioner concedes that her returns for the years at issue were not timely filed, she claims that those returns were filed when Mr. Golemb presented copies of them to the revenue agent on May 21, 1992, and that the period of limitations for each of those years started to run on that date.[4] We disagree. When petitioner, through Mr. Golemb, presented copies of her returns for the years at issue to the revenue agent on May 21, 1992, it was her position that she had already filed the originals of those returns and that she was merely presenting copies of such returns to the Service. Moreover, the copy of petitioner's 1985 return was not signed or dated by petitioner. Petitioner's original signature appeared on the copies of her returns for 1986 through 1990, but no date appeared next to her signature on any of those returns. Although the Service, on a date not disclosed by the record, temporarily processed as filed the copies of petitioner's returns that Mr. Golemb presented to

---

[4]If petitioner were correct in asserting that her returns for the years at issue were filed on May 21, 1992, the period of limitations for each such year would have expired on May 21, 1995. The filing of delinquent returns which are not fraudulent is sufficient to commence the running of the period of limitations under sec. 6501. See Bennett v. Commissioner, 30 T.C. 114, 123-124 (1958).

the revenue agent on May 21, 1992, around August 13, 1996, the Service corrected that action on its records and reflected on those records an entry for "substitute for return" for each year at issue, which is an administrative entry used in cases where a taxpayer has not filed a return.

We hold that petitioner has failed to carry her burden of establishing a prima facie case showing that she filed her returns for the years at issue on May 21, 1992, and that the respective periods of limitations prescribed by section 6501 for those years have expired.[5]  Since petitioner has failed to establish that those returns were filed on May 21, 1992, the tax for each year at issue may be assessed.  See sec. 6501(c)(3).

We shall now address the additions to tax under section 6653(b) for 1985 through 1988 and under section 6651(f) for 1989 and 1990.  In order for the additions to tax for fraud under section 6653(b) to apply, respondent must prove by clear and convincing evidence that an underpayment exists and that some portion of such underpayment is due to fraud.  See sec. 7454(a); Rule 142(b); <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 210 (1992).  In order for the additions to tax for fraudulent failure to file under section 6651(f) to apply, we must consider essen-tially those same elements.  See <u>Clayton v. Commissioner</u>, 102

_____

[5]We express no opinion herein as to the result that would obtain if petitioner had intended to file the copies of her returns for the years at issue that she presented, through Mr. Golemb, to the revenue agent on May 21, 1992.

T.C. 632, 653 (1994).  Respondent must prove under section 6651(f) that petitioner's tax liability for each year at issue exceeds her prepayment credits and that her failure to file a return for each such year was due to fraud.  See secs. 7454(a), 6651(a)(1), (b)(1); Rule 142(b); see also Clayton v. Commissioner, supra.  The parties have stipulated that petitioner is liable for, and they signed the 1985-1990 Form 870 in which petitioner agreed that she is liable for, additional taxes of $7,103, $15,975, $12,291,[6] $16,569, $17,310, and $39,239 for 1985 through 1990, respectively.  On the record before us, we find that respondent has established by clear and convincing evidence that for each of the years 1985 through 1988 petitioner has an underpayment and that for each of the years 1989 and 1990 she has a tax liability that exceeds her prepayment credits.

To prove fraudulent intent, respondent must prove by clear and convincing evidence that the taxpayer intended to evade taxes that he or she believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes.  See Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Parks v. Commissioner, 94 T.C. 654, 661 (1990); see also Laurins v. Commissioner, 889 F.2d 910, 913 (9th Cir. 1989), affg. Norman v. Commissioner, T.C. Memo. 1987-265.  The existence of fraud is a question of fact to be resolved upon consideration

---

[6]The tax liability for 1987 does not take into account estimated and other tax payments for that year totaling $6,500.

of the entire record. See <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992); <u>Recklitis v. Commissioner</u>, 91 T.C. 874, 909 (1988); <u>Gajewski v. Commissioner</u>, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed or imputed and should not be found in circumstances which create at most only suspicion. See <u>Toussaint v. Commissioner</u>, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25; <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 700 (1989); <u>Katz v. Commissioner</u>, 90 T.C. 1130, 1144 (1988). Direct evidence of the requisite fraudulent intent is seldom available. See <u>Petzoldt v. Commissioner</u>, <u>supra</u> at 699; <u>Rowlee v. Commissioner</u>, 80 T.C. 1111, 1123 (1983). Consequently, respondent may prove fraud by circumstantial evidence. See <u>Toussaint v. Commissioner</u>, <u>supra</u> at 312; <u>Marsellus v. Commissioner</u>, 544 F.2d 883, 885 (5th Cir. 1977), affg. T.C. Memo. 1975-368; <u>Rowlee v. Commissioner</u>, <u>supra</u> at 1123.

The courts have identified a number of badges of fraud from which fraudulent intent may be inferred. Those badges include (1) consistent and substantial understatement of income; (2) inconsistent or implausible explanations of behavior; (3) lack of credibility of the taxpayer's testimony; (4) failure to file a return; (5) conviction under section 7203 for failure to file a return; and (6) failure to make estimated tax payments. See <u>Laurins v. Commissioner</u>, <u>supra</u> at 913; <u>Bradford v. Commissioner</u>, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo.

1984-601; <u>Lord v. Commissioner</u>, 525 F.2d 741, 745 (9th Cir. 1975), affg. in part and revg. in part 60 T.C. 199 (1973); <u>Ruark v. Commissioner</u>, 449 F.2d 311, 312-313 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-48; <u>Niedringhaus v. Commissioner</u>, <u>supra</u> at 211; <u>Parks v. Commissioner</u>, <u>supra</u> at 664-665; <u>Miller v. Commissioner</u>, 94 T.C. 316, 334 (1990); <u>Recklitis v. Commissioner</u>, <u>supra</u> at 910; <u>Castillo v. Commissioner</u>, 84 T.C. 405, 409 (1985). In addition, the taxpayer's background, including the sophistication, experience, and education of the taxpayer, and the context of the events in question may be considered circumstantial evidence of fraud. See <u>Plunkett v. Commissioner</u>, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274; <u>Niedringhaus v. Commissioner</u>, <u>supra</u> at 211. Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia constitutes persuasive circumstantial evidence of fraud. See <u>Bradford v. Commissioner</u>, <u>supra</u> at 307; <u>Petzoldt v. Commissioner</u>, <u>supra</u> at 700.

The record in this case is replete with indicia of fraud by petitioner. Petitioner, an attorney in private practice who also served during the 1980's as a part-time judge of various local courts in and around San Diego, California, was fully aware of the requirement to report income and to file returns for the years at issue. She also knew about the possible criminal consequences for failing to file a return. Nonetheless, petitioner did not report any income or file a return for any of

the years at issue, thereby establishing a six-year pattern of substantial and consistent understatement of income.  Petitioner was convicted under section 7203 for failing to file her return for 1990.  In the plea agreement relating to her conviction under section 7203, petitioner admitted that she also willfully failed to file returns for 1987, 1988, and 1989, and thereby failed to report a tax liability of approximately $39,753.  Except for certain estimated tax payments for 1987, petitioner failed to make required estimated tax payments for the years at issue.  Petitioner gave inconsistent and implausible explanations of her behavior to the revenue agent and the special agent during their examination of the years at issue.  For example, she stated variously that she filed her returns for the years at issue, that respondent must have lost those returns, that if those returns were not filed, Mr. Golemb was at fault because he was supposed to have filed them, and that she filed her 1985, 1986, and 1990 returns, but Mr. Golemb filed her 1987, 1988, and 1989 returns.  At trial, petitioner offered similar explanations of her behavior that the Court did not find credible.  We do not believe, inter alia, petitioner's explanation at trial, which she also gave to the Service's agents, that she thought her return preparer, Mr. Golemb, would sign and file her returns for the years at issue.

Based on our examination of the entire record in this case, we find that respondent has established by clear and convincing evidence that petitioner intended to evade tax for each of the

years 1985 through 1990, which she believed to be owing, by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax.  We further find on that record that petitioner is liable for (1) the additions to tax for fraud (a) under section 6653(b)(1) and (2) for 1985, (b) under section 6653(b)(1)(A) and (B) for 1986 and 1987, and (c) under section 6653(b)(1) for 1988 and (2) the additions to tax under section 6651(f) for 1989 and 1990, as determined by respondent in the notices.

To reflect the foregoing,

Decision will be entered for respondent.