T.C. Memo. 2005-112

UNITED STATES TAX COURT

DENNIS E. RUNKLE AND DEBRA A. RUNKLE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17192-02.                    Filed May 18, 2005.

Dennis E. and Debra A. Runkle, pro sese.

<u>Timothy A. Lohrstorfer</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income tax for 1991 through and including
1995 (years at issue) and determined that petitioners were liable
for the addition to tax under section 6651(f)[1] for fraudulent

---

[1]All section references are to the Internal Revenue Code in
(continued...)

failure to file a timely income tax return and alternatively under section 6651(a)(1) for failure to file timely. Respondent also determined that petitioners were liable for the years at issue for the penalty under section 6654 for failure to pay estimated taxes. After concessions, the issues to be decided include whether petitioners are liable for the addition to tax under section 6651(f) for fraudulent failure to file a timely income tax return. We hold that petitioners are liable. We therefore do not need to decide alternatively whether petitioners are liable for the addition to tax under section 6651(a)(1).

The second question we are asked to decide is whether petitioner Dennis E. Runkle (Mr. Runkle) is entitled to deduct business expenses in excess of the 19.2-percent deduction ratio of expenses to income that respondent allowed in the notice of deficiency (deficiency notice), dated August 7, 2002, based upon the expenses Mr. Runkle claimed regarding his insurance-related business on the 3 previous years' tax returns. We hold that he is not.

The third issue is whether petitioners are liable for the years at issue for the addition under section 6654 for failure to pay estimated taxes. We hold that petitioners are liable.

---

[1](...continued)
effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are incorporated by this reference, and the facts are so found. Petitioners resided in Fort Wayne, Indiana, when they filed the petition.

General Background of Petitioners

Both petitioners were self-employed entrepreneurs with financial and business experience. Mr. Runkle was self-employed in bicycle sales from 1972 to 1985, during which time he hired a bookkeeper or certified public accountant to maintain the books and records for the bicycle sales activity.

Mr. Runkle then became involved in insurance sales as an independent insurance agent in 1986 and has been a self-employed insurance agent since 1986. He has held a Life Underwriters Training Counsel Fellow (LUTCF) certification since at least 1991.

During the years at issue, Mr. Runkle also sold computers and computer equipment, and he obtained a 2-year associate's degree as a paralegal through a correspondence school in the mid-1990s.

Mr. Runkle began operating DR Financial, Inc. in the 1990s to promote the sale of insurance products and annuities. He also served on the financial commission of the Calvary Temple Church.

Mrs. Runkle operated the Canyon Kennel as a sole proprietorship since its inception in 1988 through at least 1995. She provided dog and cat kenneling and grooming services through Canyon Kennel. She maintained a checking account and was responsible for paying the Canyon Kennel's bills and collecting its income.

Filing of Tax Returns & American Institute Philosophy

Petitioners timely filed their Federal income tax returns for all years before 1990 and paid the related taxes due. On February 25, 1991, petitioners applied for a $25,000 home equity loan line of credit with Garrett State Bank to pay their taxes for 1990.[2] Petitioners timely filed a joint return for 1990 showing a tax liability of $13,467, which they paid with the loan proceeds from Garrett State Bank.

In the fall of 1991, petitioners attended a seminar sponsored by the American Institute for the Republic (American Institute) at which it promoted its "untaxing" program. The American Institute purported to advise petitioners how to "opt out of the system of paying taxes" and provided petitioners with letters to send to respondent's Service Center and agents in petitioners' effort to "opt out" of the taxing system.

---

[2]Mr. Runkle showed his monthly gross income as $6,000 in the home equity loan application and showed his monthly net income as $4,500. Mrs. Runkle showed her monthly gross income as $1,731 and her monthly net income as $1,298.25.

Petitioners paid approximately $1,000 to the American Institute and wrote "untaxing service" in the memo section of the checks and "final payment for untaxing."

Petitioners did not file a Federal income tax return for any year after 1990, nor have they made any estimated income tax payments regarding those years with one lone exception. Mr. Runkle made a $1,987 payment towards his Federal income tax for 1991 on April 17, 1991. Mr. Runkle made no payments for 12 years until September 28, 2003, at which time he made separate $100 payments towards each of the years 1998, 1999, 2000, 2001, 2002, and 2003.

American Institute's Untaxing Service

Instead of filing tax returns and making payments, petitioners began sending correspondence typical of other "untaxing" programs to respondent's Cincinnati Service Center in March 1992. Specifically, petitioners sent a letter dated March 24, 1992, in which they stated that they "hold the sincere belief that the federal income tax laws do not apply to [them]" and they "firmly believe that the IRS is operating under secret jurisdiction and, as such, is operating unlawfully." In a second letter of the same date, petitioners stated that they recently found that the IRS was operating under color of law and that the IRS was attempting to extort money from them. "This is a formal demand that the [IRS] cease and desist from such activity at

once." Petitioners then sent an additional letter on May 27, 1993, to respondent's Cincinnati Service Center advancing other frivolous, tax-protester type arguments. In this letter, petitioners declared that they were not taxpayers under the Code and dismissed the sections cited by respondent as not being "positive law."

Petitioners did not conduct any independent research to support the statements in petitioners' letters to respondent.

Petitioners maintained contact with the American Institute from March 1992 through at least 1995. In the course of petitioners' dealings with respondent, both administratively and judicially, the American Institute provided petitioners with rebuttal arguments to respondent's positions.

Tax Planning Activities

Sometime between 1990 and 1993, Mr. Runkle met certified public accountant William Boeykens (Mr. Boeykens) for what Mr. Runkle characterized as "mainstream tax planning" using partnerships, living trusts, and "pour-over" wills. Mr. Runkle and Mr. Boeykens[3] promoted and sold these partnership packages as an income tax and estate tax planning program to their clients during 1992 through 1995. Mr. Runkle used his knowledge of

---

[3]Mr. Boeykens advised Mr. Runkle that he was "crazy" for becoming involved in the American Institute's "untaxing service." Despite this advice, petitioners did nothing to "undo" their involvement.

income, gift, and estate tax law to promote and sell these programs to his clients. Mr. Runkle failed to maintain records of his income and expenses for this income and estate tax planning activity.

Failure To Maintain Adequate Records

Mr. Runkle also did not maintain books and records of his income and expenses for his insurance sales activities, nor did he maintain books and records for his computer sales activities for the years at issue. Although he maintained a check register for the years at issue, Mr. Runkle threw away his check registers after he balanced his checking account. Mrs. Runkle destroyed her books and records for the Canyon Kennel for the years at issue, threw away the check registers she briefly maintained for Canyon Kennel, and threw away the bank statements after she balanced the bank account during the years at issue.

Petitioners' Family Limited Partnership

Petitioners formed the Elknur[4] Family Limited Partnership on August 19, 1994.[5]

Petitioners have been the general partners of the Elknur Family Limited Partnership, each holding a 2-percent interest as

---

[4]"Elknur" is Runkle spelled backwards.

[5]We note that this date is a mere 7 days after Revenue Agent Andrews mailed Mr. Runkle a notification letter that respondent was examining Mr. Runkle for failure to file returns for 1991, 1992, and 1993.

general partner and a 4.5-percent interest as limited partner. Petitioners' children, Daniel J. Runkle, Dustin S. Runkle, and Dawn A. Runkle, each held 29-percent interests as limited partners in the Elknur Family Limited Partnership from its formation through at least December 31, 1995.

Petitioners transferred title to their personal residence to the Elknur Family Limited Partnership by quitclaim deed, dated October 18, 1994, in accordance with their partnership agreement. Petitioners received no consideration in exchange for their transfer of their personal residence to the Elknur Family Limited Partnership. The quitclaim deed referenced the consideration as "one dollar and other valuable consideration." Moreover, despite their contribution to the partnership, petitioners remained obligated to pay the outstanding obligations on the residence.

Petitioners opened a business checking account for the Elknur Family Limited Partnership on September 14, 1994, and Mr. Runkle deposited insurance commission checks into the business checking account for the Elknur Family Limited Partnership during 1994 and 1995. Petitioners used the partnership's checking account to pay personal expenses, including doctor bills and loan payments. Petitioners caused the Elknur Family Limited Partnership to file Form 1065, U.S. Partnership Return of Income, for 1994 and every year thereafter.

Petitioners submitted a purchase order to the R.V. Center, Inc., on behalf of the Elknur Family Limited Partnership, for the purchase of a 1995 Coachman recreational vehicle for $46,000[6] on April 27, 1995. Petitioners caused the 1995 Coachman to be titled in the name of the Elknur Family Limited Partnership, although petitioners personally borrowed $32,320 from the Three Rivers Federal Credit Union and traded in a 1994 Starcraft they owned. In the loan application with the credit union, petitioners showed Mr. Runkle's annual "take home pay" as $37,500 and Mrs. Runkle's as $30,000. Petitioners provided the credit union selected information returns (Forms 1099) for 1993 and 1994 regarding income Mr. Runkle received. Petitioners presented no expense information to the credit union to offset the 1993 and 1994 income reported on the Forms 1099.

Audit Examination

Mr. Runkle received correspondence from respondent during 1991 through 1995 advising him that he had a requirement to file tax returns. Mr. Runkle testified that he expected respondent to convince him that his "untaxing" assertions were inaccurate before he would cooperate with respondent's examination of 1991 through 1995.

When Revenue Agent Keith Andrews notified Mr. Runkle that respondent was examining years 1991, 1992, and 1993 and scheduled

---

[6]Amounts have been rounded to the nearest dollar.

a meeting on August 26, 1994, Mr. Runkle responded that he was unavailable to meet on the scheduled date. Mr. Runkle did not propose an alternative date. Similarly, when Revenue Agent Andrews issued an examination letter to Mrs. Runkle for 1991, 1992, and 1993, Mrs. Runkle neither appeared at the scheduled appointment nor rescheduled the appointment.

In response to the revenue agent's summons directing Mrs. Runkle to produce her books and records for 1991, 1992, and 1993, Mr. Runkle advised Revenue Agent Andrews that Mr. Runkle would accompany Mrs. Runkle to her summons appointment. Four witnesses who refused to disclose their identities also attended the summons conference with petitioners. At petitioners' request, both petitioners and Revenue Agent Andrews taped the summons conference. At the summons conference, Mrs. Runkle demanded that Revenue Agent Andrews provide her with his personal residence address as a prerequisite to her complying further with the summons. When Revenue Agent Andrews refused to provide his personal address, Mrs. Runkle advised him that the summons conference was done as far as she was concerned. She also advised Revenue Agent Andrews that she did not bring any books and records with her.

At the summons conference, Mr. Runkle demanded that Revenue Agent Andrews provide him with the Code section that makes him liable for taxes, to which Revenue Agent responded that section

6001 requires taxpayers to maintain books and records. Mr. Runkle advised Revenue Agent Andrews that he had researched section 6001 and there was no requirement to file a tax return under section 6001. Mr. Runkle encouraged Revenue Agent Andrews to take more time to research what part of the Code made petitioners subject to taxation. Revenue Agent Andrews declined Mr. Runkle's offer. Revenue Agent Andrews testified that he was intimidated by Mr. Runkle's questioning on tape in the presence of four unnamed witnesses.

Revenue Agent Andrews also testified that he concluded, after the summons conference, that he would need to issue information request letters to third parties who filed income information returns with respondent reporting income these third parties paid to petitioners in 1991, 1992, and 1993. Revenue Agent Andrews issued summonses on November 2, 1994, to third-party payors to obtain income and expense information regarding petitioners.

Petitioners filed a petition with the United States District Court for the Northern District of Indiana (Indiana Federal District Court) to quash the summonses issued to the third-party payors. The Indiana Federal District Court denied petitioners' petition to quash the summonses issued to the third-party payors. To save costs, Revenue Agent Andrews agreed that Garrett State Bank need provide only the deposit items for petitioners'

accounts for 1991, 1992, and 1993.  This included deposit information for both Mrs. Runkle's Canyon Kennel account and petitioners' joint personal checking account.

Based upon this deposit information, Revenue Agent Andrews concluded that petitioners had sufficient income to require each of them to file tax returns for 1991, 1992, and 1993.

Neither petitioner produced any documentation to Revenue Agent Andrews during the course of his examination of each petitioner's income tax liabilities for 1991, 1992, and 1993.

Criminal Investigation

Revenue Agent Andrews referred each petitioner's case to respondent's Criminal Investigation Division.  Criminal Investigation Division Special Agent Matthew Fabina (Special Agent Fabina) was assigned to investigate Mr. Runkle's failure to file income tax returns.  Special Agent Fabina and Special Agent David Diffenbach attempted to interview Mr. Runkle at his personal residence on January 11, 1996.  Mr. Runkle exercised his Fifth Amendment rights and refused to speak with Special Agents Fabina and Diffenbach.

After Mr. Runkle refused to be interviewed, Special Agent Fabina contacted banks, insurance companies, and third-party income sources to determine Mr. Runkle's income, and Special Agent Fabina issued summonses to these third parties.  Special Agent Fabina caused summonses to be served on banks for specific

bank account and loan documents pertaining to Mr. Runkle and the Elknur Family Limited Partnership for the years at issue (the bank summonses). Mr. Runkle filed another petition with the Indiana Federal District Court to quash the bank summonses. The Indiana Federal District Court again issued an order denying Mr. Runkle's petition to quash the bank summonses.

In its order, however, the Indiana Federal District Court granted the Elknur Family Limited Partnership's unopposed motion to intervene in the summons enforcement action. Mr. Runkle testified that he considered the court's granting the partnership's motion to intervene to be a victory. Mr. Runkle shared this information with the American Institute, and the American Institute assisted Mr. Runkle in contesting, on behalf of the partnership, the bank summonses. On October 28, 1996, the Elknur Family Limited Partnership, through Mr. Runkle as one of its general partners, filed its petition to quash the Garrett State Bank summonses. On January 6, 1997, the Indiana Federal District Court issued its order rejecting as "simply meritless" the partnership's arguments to quash the bank summonses.

Special Agent Fabina also caused summonses to be served on Southwestern Life Insurance Co. and Union Bankers Insurance Co. for information regarding insurance policies sold by and compensation paid to Mr. Runkle for 1991 through and including 1995 (the insurance company summonses). On March 21, 1996, Mr.

Runkle filed a petition with the Federal District Court for the Northern District of Texas (Texas Federal District Court) to quash the insurance company summonses.  A magistrate judge for the Texas Federal District Court issued findings and recommendations denying Mr. Runkle's petition to quash the insurance company summonses.  The magistrate judge for the Texas Federal District Court found that Mr. Runkle's arguments to quash the insurance company summonses were "not supported by the statute or case law."

Special Agent Fabina also caused a summons to be served on Rodman & Renshaw, Inc. on March 8, 1996, regarding income information and distributions made to Mr. Runkle for 1991 through and including 1995 (the Rodman summons).  Mr. Runkle filed a petition with the U.S. District Court for the Northern District of Illinois (Illinois Federal District Court) to quash the Rodman summons on April 3, 1996.  Special Agent Fabina served a second summons on Rodman & Renshaw, Inc. on April 28, 1997 (second Rodman summons).  Mr. Runkle filed a petition with the Illinois Federal District Court to quash the second Rodman summons on May 13, 1997.  The Illinois Federal District Court rejected Mr. Runkle's efforts to quash the Rodman summons and the second Rodman summons.  Thereafter, Rodman produced the requested documents to respondent.

Special Agent Fabina learned that Mr. Runkle, on behalf of the Elknur Family Limited Partnership, purchased a Kawasaki jet ski and a trailer for approximately $2,000 from R&D Motorsports, Inc. (R&D), on June 23, 1995. Shortly thereafter, Special Agent Fabina served a summons on R&D for their books and records pertaining to all transactions involving Mr. Runkle and the Elknur Family Limited Partnership for the years at issue. Mr. Runkle advised Randy Bills of R&D that respondent was prevented by court order from obtaining records of the Elknur Family Limited Partnership, and Mr. Runkle threatened to sue Mr. Bills if Mr. Bills gave any documents to Special Agent Fabina, even though Mr. Runkle knew that there was never a court order that prevented respondent from summonsing and receiving documents and information pertaining to the Elknur Family Limited Partnership.

In addition to all the actions to quash the various summonses, petitioners filed a motion to dismiss this case on February 17, 2004. Petitioners testified that they filed their motion to dismiss as a "tool" to force respondent to concede the fraudulent failure to file additions under section 6651(f) for the years at issue.

Deficiency Notices

By deficiency notices dated August 7, 2002, respondent determined deficiencies in, and additions to, each petitioner's Federal income taxes as follows:

Mr. Runkle

| Year | Deficiency | Addition to Tax Sec. 6651(f) | Sec. 6654 |
|------|-----------|------------------------------|-----------|
| 1991 | $28,258 | $19,703 | $1,136 |
| 1992 | 20,162 | 15,122 | 879 |
| 1993 | 20,643 | 15,482 | 865 |
| 1994 | 10,475 | 7,856 | 540 |
| 1995 | 10,100 | 7,575 | 551 |

Mrs. Runkle

| Year | Deficiency | Addition to Tax Sec. 6651(f) | Sec. 6654 |
|------|-----------|------------------------------|-----------|
| 1991 | $12,881 | $9,661 | $562 |
| 1992 | 8,983 | 6,737 | 392 |
| 1993 | 15,206 | 11,405 | 637 |
| 1994 | 20,180 | 15,135 | 1,040 |
| 1995 | 10,951 | 8,213 | 598 |

Petitioners timely filed a petition with this Court for a redetermination.

OPINION

This case presents a brazen challenge to respondent's determinations that the failure of two married, self-employed individuals to file returns was fraudulent. Mr. Runkle, a tax, financial and insurance planner, and his wife, Mrs. Runkle, a pet kennel operator, have persistently failed to file Federal income tax returns for 14 years since 1990. They acknowledged at trial that the "untaxing" program they asserted throughout this case from 1991 until as recently as their motion to dismiss, filed February 17, 2004, has no merit. At trial, petitioners

proclaimed that they want to again participate in the Federal income tax system.

We note that their wish to reenter is not without conditions, however. Instead, they have set their own terms for reentry. First, their terms of reentry include absolving them from the fraudulent failure to file addition under section 6651(f) and rather finding them liable for the failure to file addition under section 6651(a)(1). Second, Mr. Runkle seeks additional business deductions, which he cannot substantiate. Third, petitioners ask us to absolve them of the addition to tax for failure to pay estimated taxes under section 6654(a) even though petitioners failed to produce any evidence challenging respondent's determinations. In essence, petitioners, having conceded respondent's deficiency determinations, now condition their reentry to the Federal tax system on their own terms, not those by which all other taxpayers must comply.

We begin with whether petitioners' failure to file Federal income tax returns was fraudulent under section 6651(f). We then decide whether Mr. Runkle is entitled to business expenses in excess of those allowed by respondent in the deficiency notice, and then whether petitioners are liable for the estimated tax addition under section 6654(a).

A.  Fraudulent Failure To File Returns

Individuals whose gross income exceeds certain levels for a taxable year are required to file an income tax return.  Sec. 6012(a).  If an individual fails to file an income tax return, the Commissioner may impose an addition to tax up to 5 percent per month of the amount required to be shown as tax, up to a maximum of 25 percent.  Sec. 6651(a)(1).  If the failure to file is fraudulent, the addition to tax is 15 percent per month of the amount required to be shown as tax up to a maximum of 75 percent. Sec. 6651(f).

The record reflects that petitioners did not file timely income tax returns for the years at issue.  In fact, the record reflects that petitioners, as of the trial date, have yet to file their returns for the years at issue.  We must determine whether their failure to file timely was fraudulent within the meaning of section 6651(f).

In determining whether a taxpayer's failure to file is fraudulent, we consider the same elements that are considered in imposing the fraud penalty under section 6663.  Clayton v. Commissioner, 102 T.C. 632, 653 (1994).  Fraud is an intentional wrongdoing designed to evade tax known or believed to be owing. Edelson v. Commissioner, 829 F.2d 828, 833 (9th Cir. 1987), affg. T.C. Memo. 1986-223; Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601.  Respondent has the

burden of proving fraud by clear and convincing evidence.  Sec.
7454(a); Rule 142(b); Clayton v. Commissioner, supra.

The existence of fraud is a question of fact to be resolved
upon consideration of the entire record.  DiLeo v. Commissioner,
96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Estate
of Pittard v. Commissioner, 69 T.C. 391 (1977).  Fraud is never
presumed and must be established by independent evidence that
establishes fraudulent intent.  Edelson v. Commissioner, supra;
Beaver v. Commissioner, 55 T.C. 85, 92 (1970).  Fraud may be
proven by circumstantial evidence because direct evidence of the
taxpayer's fraudulent intent is seldom available.  Spies v.
United States, 317 U.S. 492 (1943); Rowlee v. Commissioner, 80
T.C. 1111 (1983); Gajewski v. Commissioner, 67 T.C. 181, 199
(1976), affd. without published opinion 578 F.2d 1383 (8th Cir.
1978).  The taxpayer's entire course of conduct may establish the
requisite fraudulent intent.  Niedringhaus v. Commissioner, 99
T.C. 202 (1992); Stone v. Commissioner, 56 T.C. 213, 223-224
(1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969).

Courts have developed several indicia, or "badges of fraud",
from which the requisite fraudulent intent can be inferred.  They
include:  (1) Failing to file income tax returns, (2)
understating income, (3) failing to maintain adequate records,
(4) concealing assets, (5) failing to cooperate with tax
authorities, (6) asserting frivolous arguments and objections to

the tax laws, (7) giving implausible or inconsistent explanations of behavior, and (8) failing to make estimated tax payments.[7] Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990); Bradford v. Commissioner, supra; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). This list is nonexclusive. Niedringhaus v. Commissioner, supra. Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia may constitute persuasive circumstantial evidence of fraud. See Bradford v. Commissioner, supra.

### 1. Failing To File Income Tax Returns

A taxpayer's intelligence, education, and tax expertise are relevant in determining fraudulent intent. Stephenson v. Commissioner, 79 T.C. 995, 1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Iley v. Commissioner, 19 T.C. 631, 635 (1952). Respondent argues that given petitioners' business background and other facts in the record, they were aware of their obligation to file income tax returns. We agree.

Mr. Runkle operated a bicycle sales business for 14 years and has been a self-employed independent insurance agent. He has held an LUTCF life insurance certification since at least 1992, and he obtained an associate's degree as a paralegal through a correspondence school in the mid-1990s. By his own testimony he

---

[7]We address petitioners' failure to pay estimated tax payments infra under the subheading entitled "Estimated Tax Addition."

became involved in what he considers "mainstream" tax planning and promoted the sale of income and estate tax planning programs using partnerships, wills, living trust, and other legal instruments. As further evidence of Mr. Runkle's financial expertise, Mr. Runkle also formed DR Financial, Inc. to promote the sale of insurance and annuities and served on a church's financial commission. In addition, Mrs. Runkle successfully operated the Canyon Kennel as a sole proprietorship for many years.

A taxpayer's filing of income tax returns in prior years is evidence that the taxpayer was aware of his or her obligation to file returns. Petzoldt v. Commissioner, 92 T.C. 661 (1989); see also Stalker v. Commissioner, T.C. Memo. 1981-544. Petitioners had a history of consistently filing income tax returns and paying the tax liability before the years in issue. The last year for which they filed a return, 1990, petitioners had a Federal tax liability of $13,467, which they timely paid with funds borrowed from Garrett State Bank. Thereafter, petitioners embarked on a course to avoid disclosing and paying their Federal tax liability. This occurred after petitioners attended a seminar in Cancun, Mexico, and bought the "untaxing" propaganda of the American Institute that established petitioners' "firm belief" there was no requirement to file returns.

Failure to file income tax returns, even over an extended period of time, does not per se establish fraud. Grosshandler v. Commissioner, 75 T.C. 1 (1980); Coulter v. Commissioner, T.C. Memo. 1992-224. An extended pattern of failing to file income tax returns, however, may be persuasive circumstantial evidence of fraud. Marsellus v. Commissioner, 544 F.2d 883, 885 (5th Cir. 1977), affg. T.C. Memo. 1975-368; Stoltzfus v. United States, 398 F.2d 1002 (3d Cir. 1968); Grosshandler v. Commissioner, supra; Coulter v. Commissioner, supra. Further, when a taxpayer's failure to file for several years is viewed in light of his or her previous filing of income tax returns for prior years, the taxpayer's nonfiling weighs heavily against him or her because the taxpayer is aware of the requirement. Castillo v. Commissioner, 84 T.C. 405 (1985).

Petitioners' asserted "firm belief" that they were not required to file income tax returns is implausible and inconsistent with their own actions. Petitioners had a consistent history of filing returns and paying taxes yet they failed to file an income tax return for each of the years at issue despite respondent's numerous requests to file returns. Further, the record establishes that both petitioners knew they were required to file income tax returns. For example, Mrs. Runkle timely filed a Federal income tax return for her deceased father for 1993 as his personal representative. Petitioners also

caused tax returns for the Elknur Family Limited Partnership to be filed for each year 1994 through 2003. Respondent contends, and we are persuaded, that petitioners' pattern of failing to file when viewed in light of their history of filing timely income tax returns for themselves and for others is evidence of petitioners' fraudulent intent to evade tax liability.

2. Understating Income

Moreover, consistent failure to report substantial amounts of income over a number of years is, standing alone, highly persuasive evidence of fraudulent intent. See Kurnick v. Commissioner, 232 F.2d 678 (6th Cir. 1956), affg. T.C. Memo. 1955-31; Temple v. Commissioner, T.C. Memo. 2000-337, affd. 62 Fed. Appx. 605 (6th Cir. 2003). Here, by petitioners' own concessions at the time of trial, Mr. Runkle had adjusted gross income[8] of $89,913 for 1991, $62,223 for 1993, $50,313 for 1993, $38,661 for 1994, and $38,211 for 1995 and Mrs. Runkle had adjusted gross income of $33,851 for 1991, $24,936 for 1992, $26,452 for 1993, $55,383 for 1994, and $27,024 for 1995. Respondent argues, and we agree, that this failure to report such substantial income is evidence of fraud.

---

[8]The adjusted gross income amount is subject to Mr. Runkle's claim that he is entitled to business expenses in excess of those allowed by respondent in the deficiency notice, infra.

3.  Failing To Maintain Adequate Records

A taxpayer's destruction of books and records of his or her income-producing activity further demonstrates a willful attempt to defeat and evade taxes. Spies v. United States, 317 U.S. at 499; Toushin v. Commissioner, 223 F.3d 642, 647 (7th Cir. 2000), affg. T.C. Memo. 1999-171. Mr. Runkle failed to maintain books and records for any of his income-producing activities for the years at issue. In fact, Mr. Runkle testified he regularly threw away his records of income and expenses once he determined whether he had a profit or loss or upon balancing his checkbook. While Mr. Runkle maintained check registers for the years at issue, he threw them away after he balanced the checkbook. Likewise, Mrs. Runkle destroyed her books and records for the Canyon Kennel for the years at issue. While she briefly retained check registers for the kennel activity, she also threw away these records. She testified that she threw away the bank statement after she balanced the checkbook during the years at issue. Through these actions, respondent argues, and we agree, that petitioners sought to conceal their income tax income liability and succeeded in delaying respondent's determination for the years at issue. Petitioners' conscious decisions not to maintain books and records, coupled with their individual decisions to destroy any available records, demonstrates their

intent to fraudulently evade their 1991 through 1995 income tax liabilities.

### 4. Concealing Assets

Concealing assets or income is also an indicium of fraud. Douge v. Commissioner, 899 F.2d at 168; Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986); Recklitis v. Commissioner, 91 T.C. at 910. Respondent contends, and we agree, that petitioners took affirmative steps to conceal their income and assets. Petitioners formed the Elknur Family Limited Partnership and transferred legal title to their personal residence to the partnership. Petitioners formed the partnership a mere 7 days after Revenue Agent Andrews notified Mr. Runkle that the years 1991, 1992, and 1993 were under examination. Petitioners also caused the Elknur Family Limited Partnership to acquire assets that have inherent personal recreational value to petitioners, including the Coachman recreational vehicle for $46,000, a Kawasaki jet ski, and a trailer. They also created a partnership checking account to which Mr. Runkle deposited insurance commission checks and from which petitioners paid personal expenses, including doctor bills and personal loan payments. As the general partners of the Elknur Family Limited Partnership, petitioners had continued control of the partnership, and we find that petitioners used the partnership to conceal their assets and frustrate respondent's collection efforts.

5.  Failing To Cooperate With Tax Authorities

We next consider petitioners' level of cooperation with respondent.  Failure to cooperate with the Internal Revenue Service (IRS) is an indicium of fraud.  Douge v. Commissioner, supra; Bradford v. Commissioner, supra at 307; Recklitis v. Commissioner, supra.  Petitioners did not cooperate with respondent's investigations.  Petitioners actively sought to delay respondent's investigation by refusing to meet with respondent's agents or refusing to offer alternative dates on which to meet.  Failing to appear at a scheduled interview caused Revenue Agent Andrews to issue a summons to Mrs. Runkle to appear on October 31, 1994, with her books and records.  When Mr. Runkle phoned Revenue Agent Andrews to advise him that Mr. Runkle would accompany his wife to the summons conference, Mr. Runkle declined the revenue agent's offer to reschedule a meeting to examine Mr. Runkle's records, a meeting that Mr. Runkle previously refused to attend.

At the summons conference, Mrs. Runkle was accompanied by Mr. Runkle and four other individuals who refused to identify themselves.  Mrs. Runkle failed to bring any of the requested books and records as summoned.  Mrs. Runkle claimed she needed the personal residence address of Revenue Agent Andrews before she would comply with the summons.  When the revenue agent provided his business address rather than personal address, Mrs.

Runkle declared that she considered the conference concluded. Further, petitioners insisted on taping the interview, and Mr. Runkle insisted on the revenue agent's telling Mr. Runkle what Code section required him to file tax returns. Revenue Agent Andrews testified that he found this questioning, in the presence of four witnesses who refused to identify themselves, to be intimidating.

Neither petitioner produced any documents or records to Revenue Agent Andrews during the course of his examination for 1991, 1992, and 1993. After concluding that petitioners would not comply with his requests, Revenue Agent Andrews had to resort to contacting third parties to verify income information and, after referring each petitioner's case to respondent's Criminal Investigation Division, petitioners continued their tactics of failing to attend meetings that necessitated Special Agent Fabian to issue third-party summonses. Petitioners on no less than four separate occasions filed petitions to quash respondent's summonses and prevent respondent's access to this information. A taxpayer's efforts to quash the Commissioner's summonses may be indicia of fraudulent intent when the taxpayer otherwise refuses to cooperate with the Commissioner. Wedvik v. Commissioner, 87 T.C. 1458, 1470 (1986).

Mr. Runkle also sought to dissuade third parties from complying with the summonses by threatening to sue the third

party if the third party complied with the summons.  For example, Mr. Runkle threatened to sue Mr. Bills of R&D if Mr. Bills provided documents of the Elknur Family Limited Partnership pursuant to the third-party summons issued to R&D.

Respondent argues, and we agree, that petitioners' actions demonstrate that petitioners intended to impede respondent's examination and investigation.  We find that petitioners refused to cooperate with respondent's agents, and their efforts to quash summonses and otherwise hamper his investigation are further indicia of fraudulent intent.

6.  Asserting Frivolous Arguments

Petitioners also relied on frivolous and meritless arguments to impede or otherwise hinder respondent's ability to determine the correct amount of tax liability.  Petitioners included these arguments in correspondence to respondent[9] as well as in support of their numerous petitions to quash respondent's summonses and in their motion to dismiss this case, filed February 17, 2004. For example, petitioners asserted in their submissions that the

---

[9]The Court of Appeals for the Third Circuit takes the minority view that merely notifying the Commissioner that the taxpayer will not comply with filing and payment obligations is inconsistent with an intent to defraud.  See Granado v. Commissioner, 792 F.2d 91 (7th Cir. 1986), affg. T.C. Memo. 1985-237; Raley v. Commissioner, 676 F.2d 980 (3d Cir. 1982), revg. T.C. Memo. 1980-571; Price v. Commissioner, T.C. Memo 1996-204. This minority view has not been followed in other circuits including the Seventh Circuit, to which this case is appealable. See Granado v. Commissioner, supra.

Code provisions upon which respondent relied are not "positive law." Courts have rejected positive law arguments as frivolous, baseless, specious, and preposterous. United States v. Maczka, 957 F. Supp. 988, 991 (W.D. Mich. 1996); Sloan v. United States, 621 F. Supp. 1072, 1076 (N.D. Ind. 1985), affd. in part and dismissed in part 812 F.2d 1410 (7th Cir. 1987).

Moreover, Mr. Runkle explained in his opening statement at trial that he understood that the arguments he raised in quashing the summonses and in filing the motion to dismiss were frivolous. See, e.g., Oscanyan v. Arms Co., 103 U.S. 261, 263 (1881) (a party may be bound by admissions made in the party's opening statement); United States v. McKeon, 738 F.2d 26, 30 (2d Cir. 1984). He explained that his intent in asserting these arguments was to use them as a negotiation "tool" to force respondent to concede the fraudulent failure to file additions.

Although tax protester arguments may not be evidence of fraud in and of themselves, they may be indicative of fraud if made in conjunction with affirmative acts designed to evade paying Federal income tax. See Kotmair v. Commissioner, 86 T.C. 1253 (1986); Fleischner v. Commissioner, T.C. Memo. 1995-389. Petitioners took or made affirmative acts designed to evade their tax liability. These affirmative acts include failing to file income tax returns, failing to maintain adequate records, understating substantial income, concealing assets, failing to

make estimated tax payments for the years at issue, and failing to cooperate with tax authorities. Accordingly, we find that petitioners' affirmative acts are evidence of fraud.

7. Giving Implausible or Inconsistent Explanations

Since approximately 1992, petitioners have given implausible and inconsistent explanations why they have not filed income tax returns. Shortly after purchasing an "untaxing service" from the American Institute, petitioners began sending letters to respondent claiming that they were not required to file tax returns and pay taxes. Petitioners asserted in letters to respondent that they "are not taxpayers" as defined by the Code, and, though knowledgeable about their taxpaying responsibilities, consciously decided to "opt out" of the system. Petitioners also declared to respondent that "we no longer volunteer our involvement with your agency or any of its subdivisions" and claimed that respondent was "operating under color of law, and have been attempting to extort money from us."

In addition, despite being fully aware of their legal duty to file a return and after having filed a return each year for more than 20 years before the years at issue, petitioners asserted that they had a "firm belief" that they no longer had a requirement to file a return. They acquired this firm belief without consulting with any tax adviser and even after learning

that Mr. Boykens, a certified public accountant, thought that their "untaxing" idea was "crazy."

We find petitioners' explanations of their "firm belief" not credible.  Mr. Runkle had a paralegal degree and had the intelligence to research the law and understand the statutes.  He demonstrated this ability at the summons conference when he explained that he had already researched section 6001 and this section did not require him to file a return.  Petitioners' actions and correspondence reveal that their belief was not an honest misunderstanding of complex provisions of the Code.  Instead, it reveals they knew they were required to file returns but failed to do so.  Their asserted belief that the tax law should not apply is an insufficient defense to fraud.  See Cheek v. United States, 498 U.S. 192, 205-206 (1991); Niedringhaus v. Commissioner, 99 T.C. at 219.

8.   Summary of the Badges of Fraud

Most of the badges of fraud upon which this Court customarily relies are present in this case.  Petitioners engaged in a pattern of failing to file income tax returns despite having the business acumen and knowledge they had sufficient income to require them to file tax returns.  They filed tax returns for others but not themselves during the years at issue, and they stopped filing tax returns for themselves after more than 20 years filing for themselves.  In addition, they deliberately

decided not to maintain books and records, and they destroyed any records they had for the years at issue. They concealed their assets through the use of their nominee, the Elknur Family Limited Partnership, and they refused to cooperate with respondent's agents. They not only refused to cooperate with respondent's agents, but they made unsuccessful efforts to quash or otherwise interfere with respondent's summonses. They intimidated the revenue agent by appearing at the summons conference and questioning him in the presence of four other individuals who refused to identify themselves. They also relied upon frivolous arguments to impede or otherwise hinder respondent's income tax determinations and this Court's consideration of this case.

Considering all of the facts and circumstances of this case, we find that respondent has proven by clear and convincing evidence that petitioners' failure to file an income tax return for the years at issue was fraudulent. Accordingly, petitioners are liable for the section 6651(f) addition to tax for the years at issue.

Because of our holding regarding the addition to tax under section 6651(f) for fraudulent failure to file, we need not address whether petitioners are liable for the addition to tax under section 6651(a)(1) for failure to file timely.

B.  Expenses Beyond Those Allowed in Deficiency Notice

Mr. Runkle has been a self-employed insurance salesman since 1986, and, as previously discussed, Mr. Runkle refused to cooperate with respondent during the examination for the years 1991, 1992, and 1993.  Lacking his cooperation, respondent determined Mr. Runkle's net income for insurance-related sales from third-party information of deposits and checks obtained pursuant to third party summonses.  As to expenses for Mr. Runkle's insurance-related activities, respondent determined deductions based on insurance-related expenses Mr. Runkle claimed on petitioners' income tax returns for 1988, 1989, and 1990.  From this analysis, respondent determined that Mr. Runkle was entitled to deductions against self-employment insurance income at the rate of 19.2 percent.

Mr. Runkle argues that, despite not having any documents to substantiate his expenses, he is entitled to deductions at the rate of 52.6 percent based on what he claims is an industry average.  We are thus asked to decide whether Mr. Runkle is entitled to insurance-related expenses in excess of the amounts that respondent allowed in the deficiency notice.

We begin with two fundamental principles of tax litigation. First, as a general rule, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving

that those determinations are erroneous.[10]  Rule 142(a); see

INDOPCO Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v.

Helvering, 290 U.S. 111, 115 (1933).

Second, deductions are a matter of legislative grace, and

the taxpayer must show that he or she is entitled to any

deduction claimed.  Rule 142(a); Deputy v. duPont, 308 U.S. 488,

493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440

(1934); Welch v. Helvering, supra.  This includes the burden of

substantiation.  Hradesky v. Commissioner, 65 T.C. 87, 90 (1975),

affd. per curiam 540 F.2d 821 (5th Cir. 1976).

A taxpayer must substantiate amounts claimed as deductions

by maintaining the records necessary to establish he or she is

entitled to the deductions.  Sec. 6001; Hradesky v. Commissioner,

supra.  A taxpayer shall keep such permanent records or books of

account as are sufficient to establish the amount of deductions

claimed on the return.  Sec. 6001; sec. 1.6001-1(a), (e), Income

Tax Regs.  The Court need not accept taxpayer's self-serving

testimony when the taxpayer fails to present corroborative

---

[10]This principle would not be affected by sec. 7491(a) even
if it applied to this case, which it does not because sec. 7491
applies to examinations begun post-July 22, 1998.  Internal
Revenue Service Restructuring and Reform Act of 1998, Pub. L.
105-206, sec. 3001(c), 112 Stat. 727.  Sec. 7491 would not shift
the burden of proof to respondent because Mr. Runkle failed to
comply with the substantiation requirements and failed to
maintain adequate records.  See sec. 7491(a)(2)(A) and (B); see
also Higbee v. Commissioner, 116 T.C. 438 (2001).

evidence.  Beam v. Commissioner, T.C. Memo. 1990-304 (citing Tokarski v. Commissioner, 87 T.C. 74, 77 (1986)), affd. 956 F.2d 1166 (9th Cir. 1992).

If a taxpayer establishes that he or she paid or incurred a deductible business expense but does not establish the amount of the deduction, this Court may approximate the amount of allowable business deductions, bearing heavily against the taxpayer whose inexactitude is of his or her own making.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  For the Cohan rule to apply, however, a basis must exist on which this Court can make an approximation.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  Without such a basis, any allowance would amount to unguided largesse.  Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

We now address whether Mr. Runkle is allowed to deduct insurance-related expenses in excess of the amount respondent allowed in the deficiency notice.  Mr. Runkle argues strenuously that, despite having no records, the Cohan rule allows him to deduct expenses in excess of the amount respondent already allowed.  We disagree.

Although the Cohan rule allows us to estimate the amount of deductible expenses in certain situations, no such situation exists here.  First, Mr. Runkle failed to maintain books and records of his income and expenses, and he also destroyed what

income and expense records he had.  In addition, Mr. Runkle's actual gross receipts for the years at issue may have been greater than the amounts respondent determined.  Mr. Runkle admitted at trial that he had no idea whether respondent identified all of Mr. Runkle's income because Mr. Runkle failed to keep records.  Therefore, we are not obliged to speculate as to the amount of his expenses.  Buelow v. Commissioner, 970 F.2d 412 (7th Cir. 1992), affg. T.C. Memo. 1990-219; Lerch v. Commissioner, 877 F.2d 624, 628 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Pfluger v. Commissioner, 840 F.2d 1379 (7th Cir. 1988) (a taxpayer who will pay more tax than if he or she had been more forthright should not cause a court to bend the law in the taxpayer's favor), affg. T.C. Memo. 1986-78; Norgaard v. Commissioner, T.C. Memo. 1989-390 (Cohan rule not applicable to estimate gambling losses where taxpayer failed to establish actual gambling gross receipts), affd. on this issue and revd. in part 939 F.2d 874 (9th Cir. 1991).

Mr. Runkle presented no evidence to support his claim to additional expense deductions.  Instead, he vaguely referred to an industry average, the basis for which is not in evidence.  Mr. Runkle introduced no credible evidence to substantiate any expenses, let alone expenses in excess of the amount respondent allowed in the deficiency notice.  Accordingly, based on the record as a whole, we hold that Mr. Runkle is not entitled to

deduct any insurance-related expenses in excess of those allowed by respondent in the deficiency notice.

C. Estimated Tax Addition

Respondent also determined each petitioner was liable for an addition to tax under section 6654(a) for failure to make estimated tax payments for each of the years at issue. Section 6654(a) provides for an addition to tax where an individual underpays estimated tax. The estimated tax addition is mandatory unless a statutory exception in section 6654(e) applies. See Recklitis v. Commissioner, 91 T.C. at 913; Grosshandler v. Commissioner, 75 T.C. at 20-21; see also Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960) (reasonable cause and lack of willful neglect are not relevant considerations for estimated tax addition).

The record reflects that Mr. Runkle made one estimated tax payment of $1,987 towards his tax liability for 1991, and since that payment in April 1991, neither petitioner has made any other estimated tax payments for the years at issue. Petitioners failed to present any evidence to contradict respondent's determination, and none of the statutory exceptions under section 6654(e) applies. We therefore find that petitioners are liable

for the addition to tax under section 6654(a) for underpaying estimated tax for each of the years at issue.[11]

D. Conclusion

We have considered petitioners' other arguments, and to the extent they are not addressed, we find them to be irrelevant, moot, or meritless.

To reflect the foregoing and the concessions of the parties,

Decision will be entered

under Rule 155.

---

[11]The failure to make estimated tax payments is also a badge of fraud evidencing the taxpayer's fraudulent intent. Clayton v. Commissioner, 102 T.C. 632, 647 (1994); Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. T.C. Memo. 1984-601.